Brian **SHEPPARD**, Plaintiff,

v.

Leon **BEERMAN**, as an individual and in his official capacity as Justice of the Supreme Court of the State of New York, Defendant.

No. CV–91–1349.

United States District Court, E.D. New York.

May 21, 1993.

Brian Sheppard, pro se.

Lisa M. Evans, Asst. Atty. Gen., New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff Brian Sheppard commenced this civil rights action against defendant Leon Beerman, Justice of the Supreme Court of the State of New York, alleging that the defendant violated his First and Fourth Amendment rights in discharging him from employment as defendant's law clerk. Defendant moves for a judgment of dismissal on the pleadings under Fed.R.Civ.P. 12(c). In addition, plaintiff appeals various determinations of the magistrate judge relating to discovery matters, and moves this Court to vacate its prior referral order to the magistrate judge. For the following reasons, defendant's motion is granted and plaintiff's motions are denied.

### FACTS

Plaintiff served as a law clerk to defendant until he was fired on December 11, 1990. Plaintiff claims that his dismissal resulted from a heated dispute on December 7, 1990, over the ethical propriety of defendant's actions and decisions in two criminal cases. The complaint notes that harsh words were exchanged between the parties: plaintiff admits calling defendant "corrupt" and a "son of a bitch", and further asserts that he in turn was called "disturbed" and "disloyal." *Id.* ¶ 14. In addition, plaintiff alleges that he informed defendant at that time that he had

written extensive notes of instances of other judicial misconduct during the preceding four years of his service in chambers. Complaint ¶¶ 8–15.

When plaintiff returned to work on December 11, 1990, he was removed from chambers by court officers, who informed him that defendant had fired him. *Id.* ¶ 22. The complaint further alleges that plaintiff was not permitted to retrieve his personal effects at that time, and that both before and after his discharge on that day, plaintiff's property was searched by defendant or by others at defendant's direction. *Id.* ¶¶ 19–20, 24. However, plaintiff concedes that he was allowed to return to chambers to retrieve his property on December 13 and 21, 1990, when accompanied by court officers, and plaintiff indicates that he is unsure whether all of his personal effects were returned. *Id.* ¶¶ 24–28.

Plaintiff also alleges that defendant made, and has continued to make, untrue and defamatory statements about him. *Id.* ¶¶ 30–33. He also asserts that on January 18, 1991, when he attended calendar call in defendant's courtroom, Justice Beerman directed him to leave the courtroom if he wished to examine court files. *Id.* ¶ 34. In addition, during a subsequent visit to the courtroom on February 11, plaintiff was allegedly told not to keep coming in and out of the room, and was told to be quiet when he sought to reply to this direction. *Id.* ¶ 37.

Plaintiff commenced this action in April 1991 under 42 U.S.C. § 1983, alleging that defendant deprived him of his First and Fourth Amendment rights in the events surrounding and subsequent to plaintiff's dismissal. Plaintiff also asserts pendent state law tort claims for, *inter alia,* false imprisonment, trespass, conversion, and defamation. Defendant filed an answer to the complaint on May 8, 1991.

Defendant now moves for judgment on the pleadings under Fed.R.Civ.P. 12(c). Plaintiff appeals from certain pre-trial orders of the magistrate judge and requests that this Court vacate its prior referral order to the magistrate judge. These motions will be addressed in turn.

## I. *Rule 12(c) Motion*

■ Normally, a motion to dismiss all or part of an action for failure to state a claim may be brought under Fed.R.Civ.P. 12(b)(6). However, because the language of Rule 12(b) limits motions under its terms to the time period before the close of the pleadings, and because Rule 12(h)(2) nevertheless permits motions to dismiss for failure to state a claim at any time up to and during the trial, Rule 12(c) may be used as a vehicle for making such a motion after the close of pleadings. *See generally* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (2d ed. 1990).

■ In deciding a Rule 12(c) motion, the court should apply the same standard as that applicable to a motion under 12(b)(6). *Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987). Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

As a preliminary matter, defendant challenges the complaint as being too broad and conclusory to support a § 1983 claim. A fair reading of the complaint, however, reveals that it sets forth in detail the particular events and transactions giving rise to this action, as well as the specific constitutional violations of which the plaintiff complains. An analysis of the claims follows.

### 1. *First Amendment claims*

While a state "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech," *Rankin v. McPherson,* 483 U.S. 378, 383–84, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987) (citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972)), it has long been recognized that "the government has a legiti-

mate interest in regulating the speech of its employees that differs significantly from its interest in regulating the speech of [the] general [public]." *Piesco v. City of New York, Dep't of Personnel,* 933 F.2d 1149, 1155 (2d Cir.) (citing *Rankin,* 483 U.S. at 383–84, 107 S.Ct. at 2896–97), *cert. denied,* —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991)).

■ As a threshold matter, an employee asserting a First Amendment claim must show that the speech in question "may be 'fairly characterized as constituting speech on a matter of public concern.'" *Rankin,* 483 U.S. at 384, 107 S.Ct. at 2897 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983)). This determination is a question of law for the court, *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1691 n. 7, based on "the content, form, and context of a given statement, as revealed by the whole record." *Rankin,* 483 U.S. at 385, 107 S.Ct. at 2897 (quoting *id.* 461 U.S. at 147–48, 103 S.Ct. at 1690–91). If the court determines that the state employee's statement pertains to a matter of public concern, it must then balance the employee's interest in making the statement against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899 (quoting *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). In balancing the countervailing interests of the public employee and employer under *Pickering,* the court must not consider the employee's statement in a vacuum; rather, "the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Id.*[1]

■ In this case, even after accepting the allegations in the complaint as true, it appears "beyond doubt" that plaintiff cannot prove any facts which would entitle him to relief. Because Sheppard's statements did not address a matter of public concern, his First Amendment rights were not implicated

by his discharge. The content, form, and context of his statements reflect convincingly that they manifest a law clerk's insubordination to his employer, a state judge, and were not uttered to address a matter of public concern. He called the defendant judge "corrupt" and used the expletive "son-of-a-bitch." Complaint ¶ 14. In addition, plaintiff concedes that his statements were made in the context of his refusal to follow the defendant judge's direction to draft a decision on a pending speedy trial motion. *Id.* ¶¶ 10, 11.

■ It is crucial to note that the relationship between a judge and law clerk is an intensely personal and confidential one. It is a relationship of a considerably different dimension than the conventional relationship between an employer and an employee. The personal and professional demeanor of a law clerk reflects not only upon the judge with whom he works, but upon the judiciary as a whole. It is not overstating the case to say that "the punctilio of an honor the most sensitive," *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (Cardozo, J.), is the standard of behavior that a law clerk must observe. The plaintiff's behavior fell egregiously short of that standard. That shortfall and his insubordination, not a disregard for his First Amendment rights, compelled his discharge.

The unassailable validity of the uniqueness of that relationship, even in the context of First Amendment considerations, was plainly recognized in *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), which points the way to decision here. In that case, the plaintiff, a high school teacher, was dismissed for sending a letter to a local newspaper that was critical of the way the defendant Board of Education and the superintendent of the schools had handled past proposals to increase taxes for the benefit of the schools. *Id.* at 565–66, 88 S.Ct. at 1733. The Court decided that the plaintiff's

---

1. The *Pickering* balancing test is also a question of law for the court. *Piesco,* 933 F.2d at 1154–55 (citing *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1691 n. 7); *but see Vasbinder v. Ambach,* 926 F.2d 1333, 1340 (2d Cir.1991) ("We can envision cases in which the question of the degree to

which the employee's speech could reasonably have been deemed to impede the employer's efficient operation would properly be regarded as a question of fact, to be answered by the jury prior to the court's application of the *Pickering* balancing test.").

rights to freedom of speech were violated, but in the course of its opinion made the following observations which are peculiarly pertinent here:

> Because of the enormous variety of fact situations in which critical statements by teachers and other public employees may be thought by their superiors, against whom the statements are directed, to furnish grounds for dismissal, we do not deem it either appropriate or feasible to attempt to lay down a general standard against which all such statements may be judged. However, ... we shall indicate some of the general lines along which an analysis of the controlling interests should run.

> . . . . .

> The [plaintiff's] statements are in no way directed towards any person with whom [he] would normally be in contact in the course of his daily work as a teacher. *Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here. [Plaintiff's] employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationship for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning.*

*Id.* at 569–70, 88 S.Ct. at 1735 (emphasis added).

*Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), is also instructive. The plaintiff there, an Assistant District Attorney, was discharged for preparing and distributing a questionnaire soliciting the views of fellow employees regarding office transfer policy, office morale, the need for a grievance committee, the level of confidence in superiors and whether they felt pressure to work in political campaigns. *Id.* at 141, 103 S.Ct. at 1687. This questionnaire was prepared after the plaintiff resisted a transfer to prosecute cases in a different section of the criminal court. *Id.* at 140, 103 S.Ct. at 1686. The reasons for her discharge were stated to be her refusal to accept the transfer and that her distribution of the questionnaire was regarded as an act of insubordination. *Id.* at 141, 103 S.Ct. at 1687. She then brought suit under 42 U.S.C. § 1983, contending that her employment was wrongfully terminated because she had exercised her constitutionally protected right of free speech. *Id.* The District Court ordered her reinstatement and awarded her back pay, damages and attorney's fees, holding that the true basis for her discharge was the questionnaire which involved matters of "public concern" and was not clearly demonstrated to interfere substantially with the operation of the District Attorney's Office. *Id.* at 141–42, 103 S.Ct. at 1687.

The Supreme Court reversed, holding that the plaintiff's discharge did not offend the First Amendment. In the course of its opinion the Court, speaking through Justice White said:

> When employee expression cannot be fairly characterized as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment....

> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.... *[Plaintiff] did not seek to inform the public that the District Attorney's Office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases. Nor did [plaintiff] seek to bring to light actual or potential wrongdoing or breach of public trust on the part of [defendant] and others....*

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

461 U.S. at 146–49, 103 S.Ct. at 1689–91 (emphasis added). *See also Arnett v. Kennedy,* 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974) (highlighting importance of maintaining discipline in government offices).

Likewise, in *Berry v. Bailey,* 726 F.2d 670 (11th Cir.1984), *cert. denied,* 471 U.S. 1101, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985), a deputy sheriff commenced an action under 42 U.S.C. § 1983, alleging that he was terminated for exercising his First Amendment rights. *Id.* at 673. The deputy had incurred the disfavor of the sheriff when he refused to recommend to a prosecutor that certain charges be dismissed against the daughter of an influential state court judge. *Id.* at 672. All of plaintiff's statements, except for one, concerned that disagreement with his superior. *Id.* at 674. In granting the defendant's motion for judgment notwithstanding the verdict, the district court held that the employee's refusal to obey his superior was not protected by the First Amendment. *Id.* at 675.

> The Eleventh Circuit affirmed, noting that: While corruption in the Sheriff's office is a matter of legitimate public concern, it is not so vital a matter that it would justify our protection of an employee's flagrant defiance of his direct supervisor.... All of *the statements* except [one] *were in direct conflict with the Sheriff.* They took place on the job and concerned [the deputy's] performance of his official duties. These statements are the kind that *Pickering* described as implicating the government's interest; they threaten office discipline and harmony in the day-to-day close working relationships with immediate superiors necessary for efficient office functioning. *Under the Pickering analysis, they are not protected speech....*
> We agree with the district court that [the plaintiff] is trying to claim that he was fired for doing his job expeditiously and honestly. *While in this case, [the plaintiff's] approach to law enforcement might have yielded a more pristine sheriff's department than that of his superior, we cannot encourage employees to defy their employers and refuse to perform their duties every time they that the employer is*

*running the office improperly.* This is not a case where [the plaintiff] performed his duties according to his superior's wishes, and pursued some outside course of action against the office's inadequate enforcement of the law. Such a fact pattern would have presented a closer case. On these facts, we cannot find any speech that passes the *Pickering* test and is thus constitutionally protected.

*Id.* at 676 (emphasis supplied). *Accord Finch v. City of Vernon,* 877 F.2d 1497, 1502 (11th Cir.1989) (employee could be discharged lawfully if failed to heed orders of superior); *Cox v. Dardanelle Pub. Sch. Dist.,* 790 F.2d 668, 675 (8th Cir.1986) (same holding; applying *Pickering* balancing test). *See Rankin v. McPherson,* 483 U.S. 378, 386 n. 10, 107 S.Ct. 2891, 2899 n. 10, 97 L.Ed.2d 315 (1987) (recognizing that plaintiff could have been deemed an insubordinate and would then face the possibility "of being fired for failing to follow orders"); *Connick v. Myers,* 461 U.S. 138, 163 n. 3, 103 S.Ct. 1684, 1699 n. 3, 75 L.Ed.2d 708 (1983) (Brennan, J., dissenting) (where employee answers "No" to an employer's request to perform a lawful task in the scope of his duties, then "[a]lthough such a refusal is 'speech,' which implicates First Amendment interests, it is also insubordination, and as such may serve as the basis for a lawful dismissal.").

In his opposition papers, plaintiff artfully seeks to characterize his statements as touching upon matters of public concern involving allegations of misconduct by a state court judge. *See, e.g., Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 839, 98 S.Ct. 1535, 1541, 56 L.Ed.2d 1 (1978); *Vasbinder v. Ambach,* 926 F.2d 1333, 1339–40 (2d Cir.1991); *Rookard v. Health and Hosps. Corp.,* 710 F.2d 41, 46 (2d Cir.1983). However, the content, form, and context of his statements, as set forth above, belie that characterization.

Sheppard did not make his statements "as a citizen upon matters of public interest, but instead as an employee upon matters only of personal interest." *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690. Those statements were not made to reveal any alleged judicial misconduct because Sheppard never filed a com-

plaint with the proper authorities. In upholding First Amendment claims of state employees, many courts note that the employee notified persons for the purpose of obtaining corrective action. *See, e.g., Vasbinder v. Ambach*, 926 F.2d 1333, 1340 (2d Cir.1991) (upholding First Amendment claim of terminated state employee who reported wrongdoing and corruption in federally funded program to the FBI); *Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 46 (2d Cir.1983) ("An allegation of corrupt and wasteful practices ... *made to the city official empowered to investigate such charges*, obviously involves a matter of public concern) (emphasis added); *cf. Berry v. Bailey*, 726 F.2d 670, 676 (11th Cir.1984) (rejecting plaintiff's First Amendment claim and noting that the plaintiff did not pursue any outside action with the proper authorities).

■ Here, Sheppard alleges that he observed numerous instances of judicial misconduct while he was defendant's law clerk. Complaint ¶ 7. Yet, during that four year period, he never sought to file a grievance against defendant with the proper authorities. Instead, plaintiff told his employer of the alleged improprieties during a personal, employment dispute. This demonstrates convincingly that plaintiff was engaged in an *ad hominem* attack on the judge, and not expressing himself on a matter of public concern. *See, e.g., Barkoo v. Melby*, 901 F.2d 613, 618–19 (7th Cir.1990) (employee did not speak on matter of public concern in commenting upon personal grievance with superiors because the speaker's motivation and choice of forum are considered in determining level of public concern); *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir.1989) (statement of police officer did not address matter of public concern because he did not intend to disclose malfeasance of government officials, but to air his own frustrations).[2]

Consequently, "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public [employer] allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. Accordingly, since this Court concludes as a matter of law that plaintiff's discharge does not implicate the First Amendment because his speech did not address a matter of public concern, we need not engage in the *Pickering* balancing test, *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991), nor does this case involve a discharge based on speech that contains both protected and unprotected categories of speech, *see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Were this Court to balance Sheppard's interest in making the statements against the State's interest in promoting the efficiency of the vital judicial services it provides through its employees, it would unhesitatingly strike the balance in favor of the State. By confronting his immediate superior, Sheppard threatened the institutional efficiency of the judiciary not only by the content of that insubordinate confrontation, but by the manner, time and place in which it occurred. *See Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415 n. 4, 99 S.Ct. 693, 696 n. 4, 58 L.Ed.2d 619 (1979). There is no constitutional interest to be guarded which required Justice Beerman to tolerate the insolent insubordination of a law clerk which he justifiably believed would "undermine his authority, and destroy close working relationships." *Connick*, 461 U.S. at 154, 103 S.Ct. at 1694.

■ Sheppard's additional claims under the First Amendment must likewise be dis-

---

**2.** It is clear that a statement made in private "does not ... vitiate the status of the statement as addressing a matter of public concern," where indeed it relates to a matter of public concern. *Rankin*, 483 U.S. at 386 n. 11, 107 S.Ct. at 2899 n. 11; *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1979). However, since plaintiff's statements were made during the course of his insubordination, the fact that he uttered them

privately—with no intent to file a grievance against defendant—is indicative of their personal nature. *See Connick*, 461 U.S. at 148 n. 8, 103 S.Ct. at 1691 n. 8 (regardless of whether speaker chooses a public or private forum, "a [statement] *not otherwise of public concern* does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest.").

missed. He claims that defendant deprived him of his right to petition for redress of grievances. However, he has not pleaded a cognizable claim for deprivation of that right because this very action affords Sheppard a vehicle for redress within the court system. Similarly, his contention that he was denied access to criminal proceedings and documents, based on defendant's remarks to Sheppard from the bench in January and February 1991, must be denied. It is clear beyond doubt that defendant is clothed with complete power to manage the routine comings and goings in his courtroom, even to the extent of requiring visitors to conduct their research into court records elsewhere or excluding specific persons entirely from the courtroom. It is also worth noting, as defense counsel does, that Sheppard's access to proceedings claim hinges on the requirement that he was not permitted to review court records in defendant's courtroom; his claim does *not* assert that he was in fact denied access to the courtroom or any court records. Accordingly, Sheppard's sub-claims under the First Amendment for violation of the rights to redress and access to criminal proceedings must be dismissed.

### 2. *Fourth Amendment claims*

 Plaintiff asserts that defendant violated his Fourth Amendment rights in connection with the search and seizure of his personal effects in chambers. None of these claims warrant extensive discussion. The Fourth Amendment, applicable to the states via the Fourteenth Amendment, protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Plaintiff claims that his property was unlawfully seized when defendant prevented him from collecting his property after he was discharged. Property is seized when "there is some meaningful interference with the individual's possessory interests in that property," *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984), to further the investigatory purposes of government agents. *See id.* at 114, 120–21, 104 S.Ct. at 1656, 1660 (seizure of package occurred when federal agents took custody of package to determine whether it con-

tained narcotics); *United States v. Place*, 462 U.S. 696, 701, 705–708, 103 S.Ct. 2637, 2641, 2643–45, 77 L.Ed.2d .110 (1983) (travelers luggage was "seized" when government agents detained luggage while they sought to obtain a search warrant). A reasonable seizure does not run afoul of the Fourth Amendment. *Jacobsen*, 466 U.S. at 121–22, 104 S.Ct. at 1660–61.

In this case, plaintiff agrees that defendant was not investigating him for suspected criminal activity. Plaintiff simply alleges that defendant restrained him from collecting his personal effects upon his discharge, but concedes that he was able to retrieve all of his belongings approximately one week later. It is objectively reasonable for a judge to safeguard court files and to ensure that a terminated law clerk does not remove or destroy court documents in retaliation for his firing. Consequently, requiring plaintiff to return twice to retrieve his property in the company of court officers was reasonable and does not give rise to a § 1983 cause of action.

 Plaintiff also claims that defendant violated his Fourth Amendment rights by unlawfully searching his property. However, whether a search implicates the warrant requirement of the Fourth Amendment depends on whether society objectively recognizes a privacy interest in the area to be searched. *O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714 (1987); *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). In *O'Connor*, a psychiatrist at a state hospital commenced a § 1983 action alleging that his employer violated the Fourth Amendment by conducting an unlawful search of his private office and by seizing a few personal items, which were subsequently used in an administrative proceeding. 480 U.S. at 712–13, 107 S.Ct. at 1495. The Court upheld the psychiatrist's cause of action, recognizing that a state employee does not relinquish his constitutional rights against unreasonable searches and seizures conducted by his employer in the employee's work area, provided that society would recognize a reasonable expectation of privacy in the area to be searched. *Id.* at 715–717, 107 S.Ct. at 1496–97. Since the plaintiff in

*O'Connor* had a reasonable expectation of privacy in the personal files stored in his private office containing sensitive psychological data of his private patients, the Court held that his employer's search implicated the Fourth Amendment because society would recognize a reasonable expectation of privacy in that work setting. *Id.* at 718, 107 S.Ct. at 1498. *See also Gillard v. Schmidt,* 579 F.2d 825, 828 (3d Cir.1978) (guidance counselor who maintains sensitive student records has a reasonable expectation of privacy in school desk).

In contrast, the plaintiff's asserted right to the exclusive dominion and control of the appurtenances of a judge's chambers is a dubious one, indeed. As has been discussed above, the relationship between a judge and his law clerk is *sui generis.* The case files, memoranda and correspondence pertaining to judicial matters which virtually inundate the chambers of a judge in large metropolitan areas, whether found in file cabinets or desk drawers, must be deemed to be subject to the control of, and inspection by, the judge.

As the Court noted in *O'Connor:*

Public employees' expectations of privacy in their offices, desks, and file cabinets ... may be reduced by virtue of actual office practices and procedures, or by legitimate regulation ... [and] some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable.... Given the great variety of work environments in the public sector, the question of whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis.

480 U.S. at 717–18, 107 S.Ct. at 1497–98. The very nature of the work environment that pervades judicial chambers drives this Court to conclude that Sheppard had no rea-

sonable expectation of privacy in chambers' appurtenances, embracing desks, file cabinets or other work areas. Accordingly, the Fourth Amendment claims must be dismissed.[3]

## II. *Plaintiff's Appeal from the Magistrate Judge's Order*

This court entered a general referral of all pre-trial matters to Magistrate Judge Ross on May 17, 1991. Since that time, the magistrate judge has met with counsel for the parties on several occasions and has entered several orders. Plaintiff now appeals from four separate elements assertedly incorporated into the magistrate judge's oral order at the conference of January 16, 1992:

The four discrete rulings ... to which plaintiff objects are (1) that counsel will not be permitted to administer oaths at the audiotaped depositions, and that plaintiff will have to provide a third person to do so in the event that Ms. Evans [counsel for defendant] arbitrarily decides not to do so; (2) that counsel will not be permitted to operate the tape machines at the depositions, and thus that plaintiff will have to provide a third person to do so at each taping; (3) that all such third persons proffered by plaintiff must be pre-screened by Ms. Evans under vague standards of competence and independence; and (4) that all audiotaped depositions taken on plaintiff's behalf must be transcribed, and that even though it is defendant, and not plaintiff, who wants them all transcribed, plaintiff must pay for all transcriptions unless he can justify shifting the costs to defendant.

Pl.'s Memo. of Law in Supp. of Pl.'s Objections to Magistrate's Orders at 2.

For the reasons set out below, the appeal as to each of these elements is denied.

---

**3.** Plaintiff also claims that his person was seized when defendant ordered court officers to remove him from chambers on December 11, 1990, and when defendant ordered him to "sit down and not speak" when he was entering and exiting the courtroom on February 11, 1991. Pl.'s Memo. of Law in Opp'n at 38–39. However, it is clear that these claims are frivolous because plaintiff's person was never "seized" as his liberty was not restrained in either of those instances. *Graham*

*v. O'Connor,* 490 U.S. 386, 396 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989). After defendant discharged plaintiff on December 11, the court officers simply escorted him from chambers and from the courthouse; plaintiff was free to go anywhere else that he desired. Similarly, plaintiff's liberty was not restrained on February 11 because he was free to remain in or to leave defendant's courtroom.

As to issue number four—the matter of whether all depositions must be transcribed, and which side must pay the cost of transcription—it is clear that this matter is not properly presented for appeal. The magistrate judge's written order, labeled "For purposes of clarification" and endorsed on Sheppard's January 21 letter offering his summary of the January 16 orders, states explicitly that "no requirement was imposed that all depositions be transcribed...." ¶ 2. As regards the allocation of costs, it is clear that this question was never in fact conclusively settled before the magistrate judge. The transcript of the January 16 conference reveals the following remarks:

> THE COURT: I would like you to brief that limited issue, okay? And not massive, just send me a letter brief, just on that issue—
>
> MR. SHEPPARD: Right.
>
> THE COURT: —not other issues.
>
> MR. SHEPPARD: Right.
>
> THE COURT: Okay?
>
> MR. SHEPPARD: Okay.
>
> MS. EVANS: The issue? I'm sorry.
>
> THE COURT: Of who bears the cost of the transcription.
>
> . . . . .
>
> MR. SHEPPARD: Can I get a time frame for when we're supposed to have our letter briefs in on the issue of bearing the cost of transcription?
>
> . . . . .
>
> THE COURT: And when I get all the briefs, then we'll have a phone conference and I'll make a decision.

Tr. 55, 59, 61.[4] This state of affairs was left unresolved, as demonstrated by plaintiff's January 21 letter, in which he states, "I cannot intelligently respond to Your Honor's request for briefing on the issue of which party bears the cost of transcription.... I am left with no conception as to how to address the issue left open." Letter of 1/21/92 at 2.

4. The official calendar filed with the Clerk, sometimes referred to as the "day sheet," also notes

As to the first issue raised—who should administer the oath at depositions—this court finds Fed.R.Civ.P. 28 dispositive:

> **(c) Disqualification for Interest.** No deposition shall be taken before a person who is a relative or employee or attorney or counsel of any of the parties, or is a relative or employee of such attorney or counsel, or is financially interested in the action.

While Rule 28(c) is subject to waiver, the magistrate judge correctly concluded that defendant had not waived his objection. However, the question of who *should* administer oaths—specifically, whether defense counsel would be permitted to do so—was never resolved. As the January 16 transcript reveals, resolution of this question (while discussed briefly) was deferred to a later conference which apparently has never taken place. *See* Tr. 34–35. As above, this matter is not ripe for appeal.

Plaintiff's second objection of the four raised here—that he should be allowed to operate the tape recorders used at depositions—is likewise unavailing. As plaintiff himself concedes, the terms of Rule 28(c) are equally applicable to this issue. While he cites cases holding that the policy informing the Rule—to assure impartiality in the creation of the record of the deposition—is inapplicable where tape recorders are used, rather than stenographers or court reporters, *see, e.g., Marlboro Products Corp. v. North American Philips Corp.,* 55 F.R.D. 487, 489 (S.D.N.Y.1972), plaintiff fails to make the crucial distinction that those cases universally involve situations in which the attorney permitted to operate the device was not also a party. While plaintiff's proposed plan allowing him to operate the machines would require him to perform such subsidiary tasks as identifying speakers, a reading of the January 16 transcript strongly suggests that this approach would be unworkable. Not only have the proceedings in this case been marked by acrimony, but plaintiff has also conducted himself at times in a volatile manner, to say the least:

the pendency of this issue.

THE COURT: Please don't get excited Mr. Sheppard. It'll be a lot easier—

MR. SHEPPARD: I am very excited what does this mean—

MS. EVANS: Mr. Sheppard—

MR. SHEPPARD: —if she thinks that someone—

MS. EVANS: Mr. Sheppard, I have—

MR. SHEPPARD: That's absurd.

THE COURT: Mr. Sheppard, this is one of the reasons why I have a problem with you doing everything all by yourself because you're just completely losing it. Please.

MR. SHEPPARD: No, no.

THE COURT: Please.

MR. SHEPPARD: Okay, okay.

THE COURT: We're having a conference in a Court of law and you know that.

. . . . .

THE COURT: We're not talking about sanctions [against defense counsel].

MR. SHEPPARD: I am talking about sanctions.

THE COURT: Well, I'm not talking about sanctions.

MR. SHEPPARD: Well, I think we—

THE COURT: Mr. Sheppard—

MR. SHEPPARD: We are building into this [sic] more ways of drawing it out. She says I can talk to her. She still has not returned my phone call.

MS. EVANS: Mr. Sheppard, I think that you're—

THE COURT: Mr. Sheppard, you're proving Ms. Evans' point. Please calm down.

MR. SHEPPARD: No.

THE COURT: Please calm down. What's going to happen in the middle of a deposition when you get very excited and something goes wrong with the machine? I want, I think there has got to be somebody else to run that machine. I will not permit the depositions to go forward with you running the machine.

Tr. 44, 47. In light of this illuminating record, and in light of the "clearly erroneous" standard applicable to this appeal, *see* 28 U.S.C. § 636(b)(1)(A), this court will not reverse the prudent decision of the magistrate judge.

█ Finally, plaintiff objects to the decision that defendant be notified of the identity of the third-party individual(s) selected by plaintiff to operate the recording devices. It is clear to this court that the magistrate judge's order merely preserves the defendant's ability to make advance objections under Rule 28(c) or other such provisions of the Rules or applicable statutes. It is equally clear that the magistrate judge promised to resolve any disputes that might emerge concerning the propriety of that person's service. *See* Tr. 45. Under these circumstances, there is no principled basis for vacating the order of the magistrate judge.

### III. *Plaintiff's Motion to Vacate the Referral*

Plaintiff also moves this court for an order withdrawing its earlier referral of pre-trial matters to the magistrate judge. Plaintiff contends that the magistrate judge has deliberately ignored the rules and case law governing the matters before her to plaintiff's detriment, and that she continues to engage in a course of conduct whose purpose is to deprive plaintiff of his ultimate day in court by making it "as drawn-out and expensive as possible for plaintiff to prosecute the case." Pl. Memo of Law at 5.

█ It is clear that a district court possesses the authority to withdraw a reference of pre-trial matters to a magistrate judge. Although neither Fed.R.Civ.P. 72 nor 28 U.S.C. § 636 addresses this question,[5] a leading commentator sensibly observes that the district court retains the power to vacate its own orders, and consequently to withdraw all or part of a referral order. *See* 7 J. Moore, Moore's Federal Practice ¶¶ 72.02[4.–4], 72.-02[4.–10], 72.03[7.–4]. It appears that the

---

**5.** It is true that both Fed.R.Civ.P. 73(b) and § 636(c)(6) permit withdrawal of a referral order in a civil case only on the basis of good cause (if by motion of the court) or extraordinary circumstances (on application of a party). Those two provisions, however, relate solely to referrals for trial on the merits upon consent of the parties.

decision rests entirely in the discretion of the district court. *Id.* In particular, under Rule 4(b) and (c) of the Standing Orders of the Eastern District on Effective Discovery in Civil Cases, a district court may enlarge or diminish the scope of a pre-trial referral order as it relates to discovery matters.

 In this case, plaintiff objects to the magistrate judge's "procedural masterplan" requiring orderly resolution of discovery disputes and other disagreements. He contends that this prejudicial treatment, as well as the magistrate judge's frequent, but unspecified, disregard for applicable law, effectively deprives him of the ability to seek legal redress for his injuries. In this respect, the core of plaintiff's assertion is that as an unemployed *pro se* litigant (albeit one with a law degree) he cannot endure the lengthy procedural complications of a case such as this one.

Even a brief examination of the January 16 conference transcript, *see, e.g.,* Tr. 26–33, 42–47, indicates that the magistrate judge in this case has been called upon to show superhuman patience in the face of plaintiff's intransigence. To the extent that plaintiff disagrees with the magistrate judge's rulings, he is free to appeal them to this court, and has done so.[6] At this juncture, there is no reasoned basis for a finding that the magistrate judge has proceeded improperly, or that this court is more capable of resolving the acrimonious pre-trial disputes between the parties.

### CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted in its entirety. This § 1983 action must be dismissed because plaintiff cannot state a cognizable claim for a First or Fourth Amendment violation under any set of facts as a matter of law. Accordingly, this Court declines to exercise supplemental jurisdiction over plaintiff's pendent state law tort claims under 28 U.S.C. § 1367(c)(3) and *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiff's appeal from the magistrate judge's rulings is denied, and his motion to vacate the prior referral order is also denied.

SO ORDERED.

---

6. For example, plaintiff has appealed one of the January 16 rulings regarding the conduct of de-positions. That appeal is addressed herein.