Brian SHEPPARD, Plaintiff,

v.

Leon BEERMAN, as an individual and in his official capacity as Justice of the Supreme Court of the State of New York, Defendant.

No. CV–91–1349.

United States District Court,
E.D. New York.

Dec. 20, 1995.

608

Brian Sheppard, New Hyde Park, NY, Pro Se.

Amy Abramowitz, Assistant Attorney General, New York City, for defendant.

### MEMORANDUM AND ORDER

GLASSER, District Judge:

#### SUMMARY

This civil rights action is before the Court on remand from the Second Circuit solely on the issue of alleged violations of plaintiff's First Amendment right to free speech. Plaintiff, Brian Sheppard ("Sheppard"), seeks a declaratory judgment, injunctive relief, and monetary damages pursuant to to 42 U.S.C. § 1983 ("Section 1983"; "§ 1983"). Defendant, Judge Leon Beerman, a justice of the Supreme Court of the State of New York for the County of Queens ("Judge Beer-

man"), moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons discussed below, the motion is granted.

#### BACKGROUND

##### I. Factual Background

The facts of this case are summarized briefly here; they are recounted in greater detail in an opinion reported at 822 F.Supp. 931 (E.D.N.Y.1993), familiarity with which is presumed.

The following material facts are undisputed. Sheppard worked as Judge Beerman's law clerk from October of 1986 until December of 1990. Complaint ¶ 3. This suit is based on his December 11, 1990 dismissal and events leading up to it.

Sheppard alleges that during his tenure as Judge Beerman's law clerk, he perceived many instances of judicial misconduct and attempted to dissuade the judge from engaging in such conduct. Complaint ¶ 7. Sheppard specifically alleges two instances of judicial misconduct: (1) that Judge Beerman arranged to have a case assigned to him for improper personal reasons; and (2) that on December 6, 1990, Judge Beerman ordered Sheppard to draft a decision denying a defendant's speedy trial motion for reasons unrelated to the merits. Complaint ¶¶ 9–10.

When Sheppard refused to draft the decision because he felt it was improper, Judge Beerman told him that, although Sheppard was not being discharged, "he should seek other employment if he felt that way." Complaint ¶ 11. Sheppard alleges that "he declined, saying that *he* was not the one who had acted improperly," and told Judge Beerman that he had kept notes of alleged judicial improprieties. Complaint ¶ 12. Sheppard alleges that Judge Beerman expressed concern about the notes and that Sheppard said "that he would no longer have a duty of loyalty to defendant if defendant continued to pressure him into taking part in misconduct." Complaint ¶ 13. Sheppard alleges that he called Judge Beerman "corrupt" and a "son-of-a-bitch," and alleges that Judge Beerman called him "disturbed" and "disloyal." Complaint ¶ 14.

The following work day, Sheppard was out sick. When Sheppard returned to work on Tuesday, December 11, he was discharged and directed to leave the courthouse. Complaint ¶ 22.

## II. Procedural Background

Sheppard commenced this case in April 1991 under 42 U.S.C. § 1983, alleging that his former employer, Judge Beerman, violated various Constitutional rights in the events surrounding and subsequent to Sheppard's dismissal. Sheppard Brief at 2. Judge Beerman filed an answer on May 8, 1991.

Since the time for pleadings had already closed, the defendant made a motion under Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") for a judgment on the pleadings. This court heard argument in April 1992 and granted Judge Beerman's motion, dismissing the complaint in its entirety. *Sheppard v. Beerman,* 822 F.Supp. 931 (E.D.N.Y.1993).

The Court of Appeals affirmed this court's judgment on the pleadings in all respects except insofar as the complaint alleged a violation of Sheppard's First Amendment right to free speech. *Sheppard v. Beerman,* 18 F.3d 147 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). In vacating and remanding that portion of the case, the Court of Appeals held that this court improperly made the factual finding that the cause of Sheppard's employment termination was insubordination, rather than the exercise of his right to free speech. *Id.* at 151. Therefore, the only claim before this court on remand is the allegation that Judge Beerman violated Shepard's First Amendment right to free speech.

Since this court did not consider the qualified immunity claim in its initial ruling, the Court of Appeals did not review that issue. This Court examines that issue for the first time here.

## DISCUSSION

Sheppard's surviving claim alleges that Judge Beerman, acting under color of New York law, deprived him of his First Amendment right to freedom of speech. Complaint ¶¶ 5, 38. Sheppard alleges this deprivation took the form of a retaliatory dismissal for Sheppard's having accused Judge Beerman of judicial misconduct. Complaint ¶¶ 1, 18.

Judge Beerman argues in the alternative (1) that Sheppard's speech was not protected by the First Amendment because it was not on a matter of public concern;[1] and (2) that he is entitled to qualified immunity from liability for damages.

### I. Rule 12(c) Standards

██ Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Fed.R.Civ.P. 12(c).[2] If the Court goes beyond the pleadings to decide an issue, the Rule 12(c) motion will be treated as one for summary judgment. *Id.; Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Frerks by Frerks v. Shalala,* 848 F.Supp. 340, 347 (E.D.N.Y.1994), *aff'd* 52 F.3d 412 (2d Cir.1995).

██ A motion for judgment on the pleadings may be granted when all material allegations of fact are admitted in the pleadings and only questions of law remain. *See George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977); *Burns International*

---

1. The contention that Sheppard's speech was not a matter of public concern might appear curious if not disingenuous. Since Sheppard has never alleged that he was prevented from publishing his grievance to any third party or to any body duly constituted to hear his complaint (nor does it appear that he has ever done so), the Court assumes that the defendant's contention is intended to convey that Sheppard's speech was not a matter of "public concern" in that sense.

2. Rule 12(c) provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
Fed.R.Civ.P. 12(c).

*Security Services, Inc. v. International Union,* 47 F.3d 14, 16 (2d Cir.1995). In deciding a motion under Rule 12(c), the court applies the same standard as that applicable to a motion under 12(b)(6). *See Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987). Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). This standard is "applied with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991) (citations omitted).

There is no factual dispute as to the content of Sheppard's speech or the sequence of events leading up to his dismissal. Thus, this motion requires the Court to reach two issues of law not fully addressed in the initial consideration of this case: (1) whether Sheppard has raised a valid First Amendment claim under § 1983; and (2) whether Judge Beerman is entitled to qualified immunity from Sheppard's § 1983 damages claim.

## II. Prima Facie Case Under § 1983

■ A suit against a public official in an individual, as opposed to official, capacity "seek[s] to impose individual liability upon a governmental officer for actions taken under color of state law." *Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). To raise a prima facie claim for relief under Section 1983, a claimant need allege only that some person acting under color of state law deprived the claimant of a federal right. *Green v. Maraio,* 722 F.2d 1013, 1016 (2d Cir.1983) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980)); *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990).

■ In general, an employee who claims that his employment was terminated in violation of the First Amendment must establish that: (1) his speech can be "fairly characterized as constituting speech on a matter of public concern," *Piesco v. Koch,* 12 F.3d 332, 342 (2d Cir.1993) (*citing Connick v. Myers,* 461 U.S. 138, 147–48 & n. 7, 103 S.Ct. 1684, 1690 & n. 7, 75 L.Ed.2d 708 (1983)); and (2) the speech was at least a substantial or motivating factor in the discharge, *id.* (*citing Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)).

### Public Concern

■ Whether an employee's speech addresses a matter of public concern is a question of law. *See Luck v. Mazzone,* 52 F.3d 475, 476 (2d Cir.1995). The more serious the nature of the public concern expressed in the speech, the more protection the speech is accorded. *See Jeffries v. Harleston,* 52 F.3d 9, 13 (2d Cir.1995) ("[T]he closer the employee's speech reflects on matters of public concern, the greater must be the employer's showing that the speech is likely to be disruptive before it may be punished."); *Vasbinder v. Ambach,* 926 F.2d 1333, 1339 (2d Cir.1991) ("An employee's charge of unlawful conduct ... is given far greater weight ... than is a complaint as to the fairness of internal office procedures.") Accusations of corruption do touch on matters of colorably public concern. *See e.g., Rookard v. Health and Hospitals Corp.,* 710 F.2d 41, 46 (2d Cir.1983) (allegation of "corrupt and wasteful practices ... obviously involves a matter of public concern").

■ Since Sheppard allegedly voiced concern that Judge Beerman was "corrupt," the Court holds that Sheppard's speech, as a matter of law, involved a matter of public concern. Therefore, Sheppard has properly pled that element of a prima facie case under Section 1983.

### Retaliatory Intent

■ Whether the speech was a motivating factor in the discharge "presents a question of fact." *See Piesco v. Koch,* 12 F.3d at 342. "While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is suffi-

cient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Gagliardi v. Village of Pawling,* 18 F.3d 188, 195 (2d Cir.1994).

Sheppard's complaint describes in detail the content of his speech and the events precipitating his dismissal. Giving due deference to the fact that Sheppard has alleged an injury to his civil rights, *see Branum,* 927 F.2d at 705, the Court concludes that Sheppard has alleged sufficient facts from which a retaliatory intent may be inferred.

The Court holds that Sheppard has raised a prima facie case under Section 1983. Therefore, Judge Beerman can prevail on this motion only if, as a matter of law, he is entitled to qualified immunity.

### III. Qualified Immunity

Qualified immunity may be raised "as a defense to liability at any stage in the litigation." *Alvarado v. Picur,* 859 F.2d 448, 451 n. 3 (7th Cir.1988). Since it is an immunity from suit, and not just from liability, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

Ordinarily, qualified immunity is resolved on a motion for summary judgment. *See Harlow,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). However, it is also proper to raise the defense of qualified immunity on a motion to dismiss, *see Landstrom v. Ill. Department of Children & Family Services,* 892 F.2d 670, 675 n. 8 (7th Cir.1990); *Lundblad v. Celeste,* 874 F.2d 1097, 1100 n. 3 (6th Cir.1989), *modified,* 924 F.2d 627, *cert. denied,* 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991), or on motions for a directed verdict or judgment notwithstanding the verdict, *see Krause v. Bennett,* 887 F.2d 362, 368 n. 3 (2d Cir.1989) (*citing Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.1988), *cert. denied,* 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989)).

Furthermore, it is a defense that must be affirmatively pleaded by a defendant official. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (citing *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)); *Oliver Schools v. Foley,* 930 F.2d 248, 253 (2d Cir. 1991); *Castro v. United States,* 34 F.3d 106, 111–12 (2d Cir.1994). Since Judge Beerman has affirmatively pleaded the defense of qualified immunity, it is a proper subject for the Court's consideration.

### Standards and Policy

The doctrine of qualified immunity provides that government officials, performing administrative and executive functions, generally are shielded from suits for civil damages in § 1983 actions insofar as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 531 (2d Cir.1993). Qualified immunity even applies in cases "where the rights were clearly established, if it was objectively reasonable for the official to believe that his acts did not violate those rights." *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); *Kaluczky v. City of White Plains,* 57 F.3d 202, 207 (2d Cir.1995).

The policy behind qualified immunity is to protect public officials from vexatious and unnecessary litigation. *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2738 ("[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery."). If the district court determines that the defendant's alleged actions were those a reasonable officer could have believed lawful, the defendant is entitled to dismissal prior to discovery. See 1 Schwartz & Kirklin, *Section 1983 Litigation* § 9.25, at 577 (1991) (citing *Anderson v. Creighton,* 483 U.S. 635, 645 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987)).

### Qualified Immunity Standards Applied

In the Second Circuit, a defendant may prevail on the defense of qualified immunity by showing that: (1) "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution"; (2) "it was not clear at the time of the acts that an exemption did not permit those acts"; or (3) "it was objectively reasonable for [the officer] to believe that his acts did not violate [the plaintiff]'s rights." *Robison v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987).

■ In evaluating a defense of qualified immunity, a court must analyze the specific federal right at issue in light of the specific facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). The trial court "appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. In doing so, the court "focuses on the objective legal reasonableness of an official's acts." *Id.* at 819, 102 S.Ct. at 2738.

■ When the factual record is not in serious dispute, "the application of qualified immunity is … ultimately a question of law for the court to decide." *See Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995) (*quoting Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir.1990)). Thus, the Court must determine, as a matter of law: (1) the law defining the right alleged to be injured; (2) the clarity with which such law was established at the time of the alleged injury; and (3) the objective reasonableness of Judge Beerman's actions.

### The Law Defining the Right

■ In general, government employees have "a right under the First Amendment, though not an unlimited right, to speak on matters of public concern." *Frank v. Relin*, 1 F.3d at 1328. A public employer, however, may escape liability by showing that the employee's conduct "threatened to interfere with government operations" and that this threat outweighed the employee's First Amendment rights. *See Waters v. Churchill*, 511 U.S. ——, ——, 114 S.Ct. 1878, 1887, 128 L.Ed.2d 686 (1994); *Jeffries v. Harleston*, 52 F.3d 9, 13 (2d Cir.1995).

■ Courts have formulated a balancing test to measure the level of First Amendment protection a public employee's speech will receive within a given government context. If the employee's interest in speaking outweighs the government's interest in promoting the efficiency of the services it performs, the First Amendment prevents the government from discharging the employee for such speech. *See Vasbinder v. Ambach*, 926 F.2d 1333, 1341 (2d Cir.1991) (citing *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). This weighing of competing interests is commonly referred to as the "*Pickering* balancing test."

■ Determining the proper balance under *Pickering* is a matter of law. *See Connick*, 461 U.S. at 150 & n. 10, 103 S.Ct. at 1691 & n. 10. The recent Supreme Court opinion in *Waters v. Churchill* emphasized that speech by public employees receives somewhat less protection under the First Amendment than it does in general.

> [M]any of the most fundamental maxims of our First Amendment jurisprudence cannot reasonably be applied to speech by government employees. The First Amendment demands a tolerance of "verbal tumult, discord, and even offensive utterance," as "necessary side effects of … the process of open debate," *Cohen v. California*, 403 U.S. 15, 24–25 [91 S.Ct. 1780, 1787–1788, 29 L.Ed.2d 284] (1971). But we have never expressed doubt that a government employer may bar its employees from using Mr. Cohen's offensive utterance to members of the public, or to the people with whom they work.

*Waters v. Churchill*, 511 U.S. ——, 114 S.Ct. 1878, 1886, 128 L.Ed.2d 686 (1994). The Supreme Court stressed that First Amendment protection is less extensive where the employer is the government because public

agencies are charged, by law, with performing the services they render. *See id.* at ——, 114 S.Ct. at 1887.

■ The Second Circuit has interpreted *Waters* to mean that the discharge of a public employee because of his speech does not violate his constitutional rights if:

> (1) the employer's prediction of disruption is reasonable; (2) the potential disruptiveness is enough to outweigh the value of the speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech.

*Jeffries v. Harleston,* 52 F.3d at 13 (citing *Waters,* 511 U.S. at ——, —— – ——, 114 S.Ct. at 1887, 1889–91). Since the Second Circuit applied these criteria to events that occurred in 1991, *see id.* it is appropriate to consider them the "currently applicable law" for the qualified immunity inquiry in this case.

### *The Clarity of the Established Right*

■ At first, it may appear that there is a paradox created by the factual issue of an employer's motive in discharging an employee and the *Harlow* test of "objective reasonableness." However, the qualified immunity analysis entails an important distinction between determining the *underlying law* governing a constitutional right and the *clarity* with which such a law is established. After carefully considering the issue, the Seventh Circuit, sitting en banc, ruled that

> despite the apparent *Harlow* paradox, an objective analysis is applicable to situations involving a public official's state of mind. *The objective determination in these cases requires that courts not consider intent* when making the final determination at summary judgment of whether the law is clearly established. . . . Thus, when intent is crucial to a party's claim, . . . the court's consideration of intent is relevant to the determination of whether a constitutional violation exists *but not in deciding if the constitutional standard was clearly established.*

*Auriemma v. Rice,* 910 F.2d 1449, 1453 (7th Cir.1990), *cert. denied,* 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991) (emphasis added). Therefore, the issue of whether a given right was clearly established at the time of an alleged constitutional violation is an objective determination that may be made as a matter of law.

■ Whether the challenged acts violated a "clearly protected" right is determined by reference to the law in effect at the time of the acts. *See Ying Jing Gan,* 996 F.2d at 531. In the Second Circuit, law is normally "clearly established" for qualified immunity purposes when there is a United States Supreme Court or circuit court ruling on point. *See Richardson v. Selsky,* 5 F.3d 616, 623 (2d Cir.1993); *Jermosen v. Smith,* 945 F.2d 547, 551 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

Many circuit courts have held that law is rarely "clearly established" where the *Pickering* balancing test must be applied.[3] As a result, such courts often grant qualified immunity under these circumstances. The Sixth Circuit, for example, grants qualified immunity if, at the time of the contested employment determination, judges of reasonable competence could disagree "as to where the *Pickering* balance would ultimately come to rest." *Guercio v. Brody,* 911 F.2d 1179,

---

3. *See, e.g., Bartlett v. Fisher,* 972 F.2d 911, 916 (8th Cir.1992) ("[B]ecause *Pickering's* constitutional rule turns upon a fact-intensive balancing test, it can rarely be considered 'clearly established' for purposes of the *Harlow* qualified immunity standard."); *DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995) ("[O]nly infrequently will it be 'clearly established' that a public employee's speech . . . is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined.") (vacating district court's denial of summary judgment); *Hansen v. Soldenwagner,* 19 F.3d 573, 575–76 (11th Cir.1994)

("[O]nly in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated 'clearly established' federal rights."); *Moore v. City of Wynnewood,* 57 F.3d 924, 935 n. 6 ("Even if [plaintiff] had shown that the *Pickering* balance tipped in his favor, he would be hard pressed to establish that his First Amendment rights were clearly established") (reversing district court's denial of qualified immunity); *see also Dahm v. Flynn,* 60 F.3d 253, 260 (7th Cir.1994) ("*Pickering* set up a balancing approach, and a call for 'balancing' does not establish anything 'clearly,' or at all.") (Easterbrook, J., dissenting in part).

1189 (6th Cir.1990), *cert. denied,* 500 U.S. 904, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991).

In addition, it may not have been "clear at the time of the acts that an exemption did not permit those acts." *See Robison v. Via,* 821 F.2d at 921. Courts have frequently held that clearly dissident speech is almost *per se* unprotected under the *Pickering* balancing test where an elected official's policy-making ability depends on cooperation from his subordinates. *See e.g., Watters v. Philadelphia,* 55 F.3d 886, 898 (3d Cir.1995) ("[W]e could not expect a district attorney to run an efficient office if his first assistant were free to impugn his integrity in public"); *Propst v. Bitzer,* 39 F.3d 148, 153 (7th Cir. 1994) (finding speech "highly disruptive to close working relationships in a workplace that required loyalty and confidence"), *cert. denied,* —— U.S. ——, 115 S.Ct. 1400, 131 L.Ed.2d 288 (1995). Courts sometimes refer to such a rule as the "policymaker exception" to the general retaliatory dismissal analysis. *See Kaluczky v. City of White Plains,* 57 F.3d at 208 (collecting cases).

Sheppard argues that "in New York, where state supreme court justices are elected," the Court should accord "paramount public concern" to issues concerning judges in conducting a *Pickering*-style balancing. Sheppard Brief, at 1 (incorporating by reference, his Original Brief, at 17). However, if anything, the reasoning behind the policy maker exception suggests the opposite result. Since Judge Beerman is accountable to an electorate, there are other checks on his conduct besides internal organizational criticism.

Based on the continual flux in this area of First Amendment jurisprudence, and the policy reasons behind qualified immunity, this court would have great difficulty in holding that the law in effect at the time of Sheppard's dismissal established the violation of a "clearly established" right. *See, e.g., DiMeglio v. Haines,* 45 F.3d 790, 805 (4th Cir.1995) ("Therefore, it was, and is, not clear that when an individual presents himself as speaking in his capacity as a public employee, that his speech is protected.") Whether or not the right in this case was "clearly established" in December 1990 is academic, how-ever, because Judge Beerman's conduct, as a matter of law, was objectively reasonable.

### The Objective Reasonableness of the Defendant's Conduct

■ Even where a right is clearly established, a defendant is entitled to qualified immunity if it was objectively reasonable for the official to believe that his acts did not violate that right. *See Kaluczky v. City of White Plains,* 57 F.3d at 207; *Frank v. Relin,* 1 F.3d at 1328. Hence, Judge Beerman's acts are entitled to qualified immunity if he has "adduce[d] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable" for him to believe that he could dismiss Sheppard without violating clearly defined law. *See Frank,* 1 F.3d at 1328.

Since the Court is considering whether qualified immunity applies and not deciding the merits of the constitutional claim, it is unnecessary to determine the actual reason for Sheppard's dismissal on this motion. *See, e.g., DiMeglio v. Haines,* 45 F.3d 790, 798 (4th Cir.1995) ("An official's entitlement to qualified immunity has never turned on whether his conduct actually violated the law; rather, it has always turned on [ ]the 'objective legal reasonableness' of [his] action.") (*citing Anderson v. Creighton,* 483 U.S. at 639, 107 S.Ct. at 3038). Although the Court must accept all factual allegations in the complaint as true, the Court need not accept the claimant's legal characterizations of events. *See Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816 ("[A] court reviewing ... the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts ... All it need determine is a question of law").

Furthermore, as the Supreme Court recently demonstrated, in certain cases it is possible to determine, as a matter of law, that the *Pickering* balance tipped against the plaintiff.

> As a matter of law, th[e] potential disruptiveness was enough to outweigh whatever First Amendment value the speech might

have had.... An employee who makes an unprotected statement is not immunized from discipline by the fact that this statement is surrounded by protected statements.

*Waters v. Churchill,* —— U.S. at ——, 114 S.Ct. at 1891 (remanding for factual determination of which speech caused employee's dismissal).

■ Moreover, a holding that speech is on a matter of public concern does not preclude a holding that the speech's value was nevertheless outweighed by its potential disruptiveness, since the speech's context may be examined independently of its content.

[A]lthough providing an insider's perspective on an important issue, [the plaintiff] did not reveal any new information to the public ... "An employee's first amendment interest is entitled to more weight where he is acting as a whistleblower exposing government corruption."

*Moore v. City of Wynnewood,* 57 F.3d 924, 933 (10th Cir.1995) (*quoting Hughes v. Whitmer,* 714 F.2d 1407, 1423 (8th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984)). Therefore, even though the Court holds that Sheppard's speech touched on a matter of public concern, it may still conclude that the First Amendment value of the speech was outweighed by the state's interest in the efficient functioning of Judge Beerman's chambers.

■ Unlike *Waters,* this case presents no dispute as to the content of the speech, nor raises any genuine issue as to which speech prompted the termination of the employee. The issue of qualified immunity can be decided on the undisputed material facts. Sheppard alleges in his own pleadings that he called Judge Beerman a "son of a bitch"; stated that he would not draft the opinion assigned to him; and told the defendant that he would no longer owe him a duty of loyalty if he persisted in the alleged judicial misconduct.

Assuming the truth of the factual allegations in the complaint (that Sheppard was fired for his speech) and drawing all inferences in favor of the non-moving party (that the speech was on a matter of public con-

cern), Judge Beerman would be entitled to qualified immunity if he reasonably believed "that he was acting in a fashion that did not clearly violate an established federally protected right." *Frank v. Relin* 1 F.3d at 1328. Under *Jeffries,* this would entail an objectively reasonable belief that (1) Sheppard's speech was likely to be disruptive; (2) that the disruptiveness of Sheppard's speech outweighed his First Amendment interest in speaking; and (3) that he was firing Sheppard for this disruptiveness. See 52 F.3d at 13.

It is not necessary, however, to determine Judge Beerman's *actual* motive in firing Sheppard, since defendant officials are generally entitled to qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. at 638, 107 S.Ct. at 3038 (*citing Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). Indeed, it is the test of " 'objective legal reasonableness' that is the touchstone of *Harlow." Id.* 483 U.S. at 639, 107 S.Ct. at 3038.

This court holds that, as a matter of law, Judge Beerman acted within the realm of objective reasonableness in terminating Sheppard's employment. Whether Shepard was fired for speech that was or was not on a matter of public concern is irrelevant, since under the circumstances, the *Pickering* balancing test would have tipped against Sheppard in any case. In other words, it would have been objectively reasonable for Judge Beerman to believe that whatever First Amendment value Sheppard's speech may have had was outweighed by its likely disruptiveness. Indeed, in light of Sheppard's disavowal of loyalty and his announcement that he would not draft the requested opinions, it is difficult to conceive of any other personnel action that would have vindicated "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Waters,* —— U.S. at ——, 114 S.Ct. at 1884 (*quoting Connick,* 461 U.S. at 142, 103 S.Ct. at 1687). Therefore, the Court holds that Judge Beer-

man is entitled to qualified immunity from damages on the First Amendment claim.

In the interest of clarity, the Court notes that this ruling does not constitute factual findings that Judge Beerman actually held certain beliefs, made specific predictions, or had a particular motive in firing Sheppard. Rather, since the qualified immunity inquiry turns on "the objective legal reasonableness of an official's acts," *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738, the Court hereby holds, as a matter of law, that Judge Beerman's conduct was objectively reasonable and is protected by qualified immunity.

## IV. Declaratory and Injunctive Relief

■ In addition to damages, Sheppard seeks a declaratory judgment and injunctive relief. Complaint at 10–11. Standing to seek injunctive and declaratory relief in a § 1983 action must be analyzed separately from standing to seek damages. *See Los Angeles v. Lyons,* 461 U.S. 95, 101–03, 103 S.Ct. 1660, 1665–66, 75 L.Ed.2d 675 (1983). Therefore, the Court will briefly address whether Sheppard has standing to maintain these claims.

## Injunctive Relief

■ In general, the standard for seeking prospective, equitable relief is quite strict. In order to gain prospective relief such as the injunction Sheppard seeks,[4] a party must demonstrate: (1) "injury in fact," which means an invasion of a legally protected interest that is (a) "concrete and particularized," and (b) "actual or imminent, not conjectural or hypothetical"; (2) a causal relationship between the injury and the challenged conduct, which means the injury "fairly can be traced to the challenged action of the defendant"; and (3) a likelihood that the injury will be redressed by a favorable decision, which means that the "prospect of obtaining relief from the injury as a result

of a favorable ruling" is not "too speculative." *See Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida,* 508 U.S. 656, ———–———, 113 S.Ct. 2297, 2301–02, 124 L.Ed.2d 586 (1993).

■ Sheppard's claim fails on several of these grounds. First, as this decision makes plain, Sheppard has not adequately demonstrated an actionable injury. Since it is not clearly established that Sheppard's speech was protected under the First Amendment, he has not adequately demonstrated "injury in fact," let alone the requisite "real and immediate threat that [he] will be wronged again—a likelihood of substantial and immediate irreparable injury." *See Los Angeles v. Lyons,* 461 U.S. at 111, 103 S.Ct. at 1670.

Second, Sheppard has failed to show an "actual or imminent" threat of injury to a legally protected right. Even if Sheppard successfully demonstrated a past violation of a clearly protected legal interest, the mere fact of past injury, "while presumably affording [the plaintiff] standing to claim damages ..., does nothing to establish a real and immediate threat that he would again suffer similar injury in the future." *Adarand v. Pena,* —— U.S. ——, ——, 115 S.Ct. 2097, 2104, 132 L.Ed.2d 158 (1995) (citations omitted). Sheppard has not alleged any facts from which one could infer that Judge Beerman would seek to injure Sheppard's First Amendment rights in the future.

In general, it makes little sense to enjoin through equity an action that is illegal. See 2 Dan B. Dobbs, *Law of Remedies* § 7.2(14), at 297 (2d ed. 1993). This is especially true where the plaintiff essentially seeks to enjoin the defendant from publishing defamatory statements, for which a damages action would lie in tort. *Id.* It is ironic that Sheppard, complaining of a violation of his claimed First Amendment right, should seek

---

4. Specifically, Sheppard prays for an order permanently enjoining defendant, and all those acting in concert with him, from (a) stating that the reason for plaintiff's discharge or removal was anything other than his objecting to, and contemplating the exposure of, judicial misconduct; (b) interfering with the efforts of plaintiff, or anyone who wishes to assist him,

in exposing such misconduct or vindicating the rights of those prejudiced by it; and (c) otherwise retaliating against plaintiff for his having exercised, or his exercising, his First Amendment rights in relation to this action or the issues involved therein.
Complaint at 10, 11.

to enjoin the First Amendment right of Judge Beerman. Regardless of whether Sheppard could prove the allegations in his complaint, it would be antithetical to the First Amendment to impose a prior restraint on Judge Beerman's speech, *see Near v. State of Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1979), or to impose on the parties an official version of events, *see Herbert v. Lando*, 441 U.S. 153, 184, 99 S.Ct. 1635, 1653, 60 L.Ed.2d 115 (1979) ("The First Amendment bars the State from imposing upon its citizens an authoritative vision of truth.")

Although the Court has only briefly touched upon some of the factors that prevent Sheppard from obtaining a forward-looking injunction, it is manifestly plain that Sheppard falls short of the high standards articulated in *Los Angeles v. Lyons* and other Supreme Court cases. The Court therefore hold that Sheppard lacks standing to maintain a claim for an injunction restricting Judge Beerman from discussing Sheppard's dismissal. That portion of his claim is dismissed.

### *Declaratory Judgment*

■ Finally, standing to seek a declaratory judgment must also be analyzed separately from standing to seek damages. *See Los Angeles v. Lyons*, 461 U.S. at 104, 103 S.Ct. at 1666; *Auletta v. Tully*, 576 F.Supp. 191, 197 (N.D.N.Y.1983), *aff'd*, 732 F.2d 141 (2d Cir.1984).

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in relevant part:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).

The Supreme Court recently emphasized that "the statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment from other areas of the law in which concepts of discretion surface." *Wilton v. Seven Falls Co.*, ——

U.S. ——, ——, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 ("We have repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' "). Therefore, this court's decision to exercise its jurisdiction over Sheppard's declaratory judgment claim is discretionary.

■ Traditionally, courts do not "declare" facts. E. Borchard, *Declaratory Judgments*, 391 (2d ed. 1941). Rather, declaratory judgments are designed to furnish an authoritative and reliable statement of the parties' rights. 1 Dobbs § 1.1, at 8. Sheppard seeks a declaratory judgment that Judge Beerman

discharged plaintiff and had him physically removed from the courthouse, not for the pretextual reasons defendant has proffered, but rather for his protesting, and [sic] considering to air, judicial misconduct.

Complaint at 10–11. Since Sheppard seeks a judgment declaring the cause of his termination to be retaliation, he essentially asks this court to declare facts. Ironically, the Second Circuit remanded this case partly because this court cannot make such a determination. *See Sheppard v. Beerman*, 18 F.3d at 151 ("[T]he motive behind Sheppard's firing in his retaliation claim is clearly a question of fact ... improper for the district court to answer ... on a motion for dismissal on the pleadings.").

Moreover, the declaratory judgement claim presents a severe ripeness problem. In order to determine whether a claim is ripe for adjudication, courts should first determine "the fitness of the issues for judicial decision and the hardship of the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In light of this court's grant of qualified immunity from damages, there do not appear to be any remaining issues for adjudication, nor any hardship that could result to the parties by withholding adjudication. Sheppard has already been discharged and does not seek reinstatement to his former position. Since there remains no live "case or controversy," Sheppard's claim for a declara-

tory judgment is not fit for judicial decision. *See Blanchette v. Connecticut Gen. Ins. Corp.*, 419 U.S. 102, 138, 95 S.Ct. 335, 355, 42 L.Ed.2d 320 (1974) ("[T]o the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint.") Therefore, the case is moot inasmuch as Sheppard seeks a declaration as to the basis of his discharge.

The Court holds in its discretion that this case is neither an appropriate one for the proposed declaratory judgment, nor does it present a live "case or controversy" necessitating a ruling on these constitutional fact issues. Since "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial," *Wilton*, at 11, this court, finding no useful purpose to be served by proceeding to the merits of Sheppard's claim for a declaratory judgment, dismisses that portion of the complaint.

### CONCLUSION

The Court holds that Sheppard's speech concerned matters of public concern. However, the Court also holds that Judge Beerman's actions did not constitute violations of clearly established First Amendment freedom of speech rights in 1990. The Court further holds that it would have been reasonable for Judge Beerman to believe that he was not violating Sheppard's First Amendment rights by terminating his employment. Therefore, the Court concludes that Judge Beerman is qualifiedly immune from suit for Sheppard's damages claim. Those portions of the complaint are dismissed accordingly.

In addition, the Court holds that Sheppard lacks standing to maintain his claim for a prospective injunction; and that the case is moot as to the declaratory judgment Sheppard seeks. Therefore, the Court dismisses the remaining claims of Sheppard's complaint.

SO ORDERED.