Brian SHEPPARD, Plaintiff–Appellant,

v.

Leon BEERMAN, as an individual and in his official capacity as Justice of the Supreme Court of the State of New York, Defendant–Appellee.

Docket No. 02–7292.

United States Court of Appeals, Second Circuit.

Argued: Oct. 23, 2002.

Decided: Jan. 28, 2003.

Brian Sheppard, Law Office of Brian Sheppard, New Hyde Park, NY, pro se, for Plaintiff–Appellant.

Michael B. Siller, for Eliot Spitzer, Att'y Gen. of N.Y., New York, N.Y. (Michael S. Belohlavek, Deputy Solicitor Gen. of N.Y., New York, NY, of counsel) for Defendant–Appellee.

Before: WINTER, McLAUGHLIN and CABRANES, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Former law clerk Brian Sheppard appeals from the district court's grant of summary judgment to his former employer, Judge Leon Beerman. In an earlier opinion in this case, we noted that the First Amendment protects the eloquent and the insolent alike. Plaintiff has now conducted ample discovery, but has failed to create a genuine issue of material fact as to Judge Beerman's intent in terminating him. We hold, therefore, that the district court correctly granted summary judgment.

## BACKGROUND

This case is before us for the third time. *Sheppard v. Beerman,* 18 F.3d 147 (2d Cir.1994) ("Sheppard I"); *Sheppard v. Beerman,* 94 F.3d 823 (2d Cir.1996) ("Sheppard II").

## I. Factual Background

The core facts have been reported in the two earlier opinions. Extensive discovery has supplemented those facts, see Sheppard v. Beerman, 190 F.Supp.2d 361 (E.D.N.Y.2002), and we need only summarize here. Brian Sheppard served as a law clerk to New York State Supreme Court Justice Leon Beerman from 1986 until he was fired on December 11, 1990.

A week earlier, on December 6, 1990, Sheppard and Judge Beerman had conferred on the Judge's contemplated action on a speedy trial motion in People v. Mason & Williams, a pending murder case. Judge Beerman asked Sheppard to draft a decision that would set the case for trial after the coming Christmas holiday season. Sheppard, however, believed that such a disposition would be unfairly prejudicial to Williams and not based on the merits. Sheppard felt that Judge Beerman, under pressure from the prosecution, was railroading Williams. Sheppard stated at his deposition that the prosecutor was upset about the lenient sentence Williams previously had received in a related drug case, and the negative publicity generated thereby. Sheppard also believed that Judge Beerman had unfairly accommodated the prosecution's request to delay the trial until January on the notion that a trial during the holiday season would be less likely to result in a conviction.

On the morning of December 7, 1990, Sheppard came to chambers and declared that he would not work on the speedy trial motion in the Williams case because of his belief that the defendant was being "railroaded." Beerman responded that, although Sheppard was not being discharged, if he felt that way he should seek other employment.

In response, Sheppard called Judge Beerman a "corrupt son of a bitch," but he quickly apologized for the characterization. Sheppard then informed Beerman that he had preserved extensive notes of other judicial misconduct by Beerman during the preceding four years. When asked by Judge Beerman to provide examples, Sheppard noted a case that Beerman had allegedly assigned to himself in order to exact revenge against the accused. He told Judge Beerman that he would go public with the notes if he was forced to resign. Then Judge Beerman called Sheppard "disturbed" and "disloyal." After the confrontation, Sheppard offered to go home but Judge Beerman instructed him to work the rest of the day, which he did.

Judge Beerman testified during his deposition that he conferred with his son, an attorney, that evening, and decided that he and Sheppard should part ways. Judge Beerman also testified that he had resolved to speak with Administrative Judge Alfred Lerner about the incident when he returned to the courthouse on the following Monday, December 10, 1990.

Sheppard did not show up for work that Monday. On Tuesday, December 11, Judge Beerman met with Judge Lerner about the incident. Judge Lerner was astonished by Sheppard's behavior and confirmed Judge Beerman's view that Sheppard could no longer remain in either Judge Beerman's employ, or indeed, in the employ of the court system.

When Sheppard arrived at work on December 11, four days after the confrontation, court officers informed him that Judge Beerman had fired him. Sheppard was forced to leave immediately and was not allowed to take his belongings with him. Several days later, Sheppard was permitted to return to chambers, accompanied by court officers, to retrieve his personal belongings.

## II. Procedural History

In April 1991, Sheppard sued Beerman in the United States District Court for the

Eastern District of New York (Glasser, *J.*), under 42 U.S.C. § 1983. The complaint alleged, *inter alia*, that Beerman's discharge of Sheppard and his subsequent conduct violated Sheppard's First and Fourteenth Amendment rights.

The district court granted Beerman's motion for judgment on the pleadings, finding that, as a matter of law, Sheppard could not state a § 1983 claim. *Sheppard v. Beerman,* 822 F.Supp. 931 (E.D.N.Y. 1993). Sheppard appealed to this Court. We affirmed most of the district court's rulings, but salvaged just Sheppard's First Amendment free speech claim because the district court had made an improper factual determination—at the pleadings stage— "that Sheppard was actually discharged for insubordination and not for his speech." *Sheppard I,* 18 F.3d at 151, 153.

On remand, the district court again granted judgment to Beerman on the pleadings. *Sheppard,* 911 F.Supp. 606 (E.D.N.Y.1995). Finding, as a matter of law, that Sheppard's speech touched on a matter of public concern and that he had shown a *prima facie* case of unconstitutional discharge, the district court nevertheless held that Beerman was entitled to qualified immunity. The court concluded that Beerman "acted within the realm of objective reasonableness in terminating Sheppard's employment," and thus was entitled to judgment on the pleadings. *Id.* at 616.

Sheppard again appealed to this Court, arguing that the district court erred in finding that Beerman was entitled to qualified immunity. We agreed, holding that the district court had erred in finding that Judge Beerman's actual intent in terminating Sheppard was "irrelevant" and in not allowing Sheppard discovery to support his claim of unconstitutional motive. *Sheppard II,* 94 F.3d at 829. We stated that Beerman would be entitled to summary judgment, "[i]f, after sufficient discovery, Sheppard cannot present particularized (direct or circumstantial) evidence of unconstitutional motive." *Id.*

On remand, Sheppard conducted exhaustive discovery, deposing over thirty witnesses, including Judge Beerman. In addition, Sheppard himself was deposed over the course of three days. In January 2001, Judge Beerman eventually moved for summary judgment.

In February 2002, the district court granted Beerman summary judgment, holding that Sheppard had failed to establish that his interest in commenting on a matter of public concern (Judge Beerman's alleged corruption) outweighed Judge Beerman's interest in the smooth, efficient operation of his chambers. *See Sheppard v. Beerman,* 190 F.Supp.2d at 381–82 (citing *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). The district court further stated that "no reasonable juror could infer from the facts alleged by Sheppard that the termination resulted from an unlawful desire to curb speech on a matter of public concern rather than a legitimate desire by Judge Beerman to maintain the efficiency, discipline and harmony of his public office." *Id.* at 384.

Sheppard now appeals again. For the reasons set forth below, we affirm the decision of the district court.

## DISCUSSION

■ We review a grant of summary judgment *de novo,* examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant. *See, e.g., IBM Corp. v. Liberty Mut. Fire Ins. Co.,* 303 F.3d 419, 423 (2d Cir.2002). Summary judgment is appropriate only if it can be established "that there is no genuine issue as to any material fact and that the moving party is entitled to judg-

ment as a matter of law." Fed.R.Civ.P. 56(c).

Government employees have a limited right under the First Amendment to speak on matters of public concern. *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993). In measuring the extent of this right, the interests that must be carefully balanced are the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731.

■ To make out a *prima facie* case that he was fired in violation of his First Amendment rights, a government employee must show that: (1) his speech can be "fairly characterized as constituting speech on a matter of public concern," and (2) the speech was "at least a 'substantial' or 'motivating' factor in the discharge." *Frank,* 1 F.3d at 1328.

■ A government official may nonetheless fire an employee for speaking on a matter of public concern if the employee's speech is reasonably likely to disrupt the effective functioning of the office, and the employee is fired to prevent this disruption. *Jeffries v. Harleston,* 52 F.3d 9, 12–13 (2d Cir.1995); *see also Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). Thus, termination does not violate the employee's rights where: "(1) the employer's prediction of disruption is reasonable; (2) the potential disruptiveness is enough to outweigh the value of the speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech." *Sheppard II,* 94 F.3d at 827 (quoting *Jeffries,* 52 F.3d at 13).

### 1. *Prediction of Disruption*

■ Doubtless, Judge Beerman's prediction of disruption caused by Sheppard's outburst was reasonable. We stated in *Sheppard II* that "[i]f a judge cannot believe that his clerk is competent, loyal, and discreet, the working relationship between the two is not just injured, it is nonexistent." 94 F.3d at 829. Indeed, in their role as employees, law clerks amount to "extensions of the judges at whose pleasure they serve." *Oliva v. Heller,* 839 F.2d 37, 40 (2d Cir.1988) (quoting *Oliva v. Heller,* 670 F.Supp. 523, 526 (S.D.N.Y. 1987)). Thus, at the very minimum, a respectful, if not congenial, relationship between clerk and judge is a prerequisite to a productive work environment within a judge's chambers.

During the incident in question, it is undisputed that Sheppard yelled at Judge Beerman and called him an obscene epithet. Sheppard's outburst was grossly disrespectful and an expression of personal contempt for Judge Beerman. Given the nature of the judge-clerk relationship, we conclude that Judge Beerman's prediction that Sheppard's outburst would disrupt the efficient operation of chambers was eminently reasonable.

### 2. *Disruption and Value of the Speech*

For similar reasons, we find that the potential disruptiveness to Judge Beerman's chambers outweighed whatever value there was in Sheppard's speech. The vitriolic manner in which Sheppard expressed himself, regardless of the substance of his remarks, made a harmonious working relationship between Sheppard and Beerman difficult to imagine. Sheppard's use of the word "corrupt" and his several references to Beerman's alleged misconduct during his invective are not of

sufficient import to outweigh the potential disruption his outburst caused.

Where an employee, such as Sheppard, "holds an extremely confidential or highly placed advisory position, it would be unlikely [for] the *Pickering* balance ... to be struck in his favor." *McEvoy v. Spencer,* 124 F.3d 92, 103 (2d Cir.1997). Sheppard was undoubtedly in such a position here, and we agree with the district court that the *Pickering* factors favor Judge Beerman.

### 3. *Employer's Motivation*

■ "[E]ven if the *Pickering* balance is resolved in the employer's favor, the employee may still demonstrate liability by proving that the employer disciplined the employee in retaliation for the speech, rather than out of fear of the disruption." *Lewis v. Cowen,* 165 F.3d 154, 163 (2d Cir.1999). Indeed, we remanded this case to the district court to allow Sheppard "sufficient discovery ... [to] present particularized (direct or circumstantial) evidence of unconstitutional motive." *Sheppard II,* 94 F.3d at 829. Thus, Sheppard's claim could survive summary judgment only if he could introduce sufficient evidence to create a genuine issue of material fact with respect to Judge Beerman's intent. We agree with the district court that he has not succeeded.

Despite exhaustive discovery, Sheppard has been unable to produce an iota of evidence that Judge Beerman terminated him to prevent him from speaking about Beerman's alleged misconduct. At its core, Sheppard's argument is that he was terminated because he threatened to go forward and expose Beerman's corruption. As the district court observed, however, this contention "is *disproved,* rather than proved, by the act of termination, since

that act, as described by Sheppard, was akin to an invitation to speak." *Sheppard v. Beerman,* 190 F.Supp.2d at 377. As we have noted before, and as Judge Beerman surely understood, terminating an employee "is far more likely to cause [one] to 'go public' than to silence him or her." *Giacalone v. Abrams,* 850 F.2d 79, 88 (2d Cir. 1988).

In response, Sheppard contends that Beerman told him to "look for another job" before Sheppard actually tarred him as a "corrupt son of a bitch." However, this comment was made after Sheppard professed unhappiness with working for Judge Beerman; Beerman's suggestion that Sheppard should consider looking for another job "if that's how you feel" is unremarkable in this tableau.

■ Sheppard's other arguments point out minor and immaterial discrepancies in Judge Beerman's deposition testimony. Sheppard essentially suggests that Judge Beerman is lying about his motive for firing Sheppard. A plaintiff, however, "cannot defeat summary judgment on a retaliation claim merely by impugning [a defendant's] honesty." *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 280 (2d Cir.1999). Sheppard has produced no other evidence, direct or circumstantial, to support his claim despite voluminous discovery.

Given the explosive exchange between Beerman and Sheppard and Sheppard's inability to produce any evidence supporting his claim of improper motive, the district court did not err in granting summary judgment to Judge Beerman. After the December 7 confrontation, Judge Beerman did not believe that maintaining a productive, harmonious working relationship in chambers was possible. On this

record, no reasonable juror could infer from the facts alleged by Sheppard that his termination resulted from an unlawful desire to curb speech on a matter of public concern rather than a legitimate desire by Beerman to maintain the efficiency and harmony of his chambers.

## CONCLUSION

We have considered Sheppard's other arguments and find them to be without merit. Therefore, the judgment of the district court is hereby AFFIRMED.