179 F.3d 57,
 Cecile CLUE and Clarence Little, Plaintiffs-Appellants-Cross-Appellees,
Nat Cummings, Steven Downes, Noel Acevedo, Irving Lee,
Richard Borish, George Gaynor, Thomas Bolden, Pete
Foley, and Eladio Diaz, Plaintiffs,
v.
Laura JOHNSON and The New York City Transit Authority,
Defendants-Appellees-Cross-Appellants,
Josephine Sapp, James Pickel, and Jeff Granum, Defendants-Appellees,
Damaso Seda, Wille James, Frank O'Brian, Roy Campbell,
Arthur Hoffman, Charles Velotta, Sandra Nurse,
Iris Teitelbaum, Defendants.
 Nos. 97-9522(L), 97-9564(XAP).
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 16, 1998.
Decided June 10, 1999.
 
 Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, Judge ) sustaining a jury verdict finding Johnson liable under § 1983 and the First Amendment for retaliating against the plaintiffs for their union activities, but overturning the portion of the jury's verdict holding the Transit Authority liable for the same retaliation. Affirmed in part and reversed in part.
 Arthur Z. Schwartz, Kennedy, Schwartz & Cure, P.C., New York, NY, for Plaintiffs-Appellants-Cross-Appellees.
 Evelyn Jonas, Counsel of The New York City Transit Authority, Brooklyn, NY (Martin B. Schnabel, General Counsel, and Richard Schoolmam, on the brief), for Defendants-Appellees-Cross-Appellants.
 Before: LEVAL and CALABRESI, Circuit Judges, and POLLACK, District Judge.*
 CALABRESI, Circuit Judge:
 
 
 1
 Plaintiffs-Appellants-Cross-Appellees Cecile Clue and Clarence Little appeal from a judgment, following a jury trial, of the United States District Court for the Southern District of New York (Jed S. Rakoff, Judge ) dated October 24, 1997. Defendants-Appellees-Cross-Appellants Laura Johnson and The New York City Transit Authority ("Transit Authority") cross-appeal from the same judgment. The jury found Johnson and the Transit Authority liable for retaliating against Clue and Little, in violation of the First Amendment and 42 U.S.C. § 1983, in response to their activities on behalf of a minority faction of the Transit Authority union. That faction, called "New Directions," was hostile to the union leadership and to management. Following the jury's verdict, the district court granted the Transit Authority's motion for a judgment as a matter of law under Fed.R.Civ.P. 50 while denying Johnson's motion to overturn the jury's verdict. We affirm the district court's judgment with regard to the Transit Authority but reverse with respect to Johnson since we conclude that she was shielded by qualified immunity.[1]
 
 BACKGROUND
 
 2
 Clue and Little are employees of the Transit Authority and union officers of Local 100 of the Transport Workers Union of America ("TWU"), which represents the Transit Authority workers in collective bargaining. They are also members of a minority faction within the TWU called "New Directions."
 
 
 3
 New Directions has campaigned to oust the TWU union leadership, mainly because New Directions believes that union leaders are colluding with management and thus not furthering the interests of transit workers. Clue and Little acted on behalf of New Directions by (1) handing out leaflets and flyers, (2) distributing a newsletter entitled "Hell on Wheels," and (3) seeking signatures on a petition to recall certain union leaders following a dispute over a pension plan recently negotiated with management.
 
 
 4
 As union officers, Clue and Little participated in the Transit Authority's "release time" program, which allowed them to conduct union business while being paid by the Transit Authority. In April 1995, management instituted a policy requiring all employees who participated in the release time program to sign in and sign out so that the amount of time they spent on union business might properly be accounted for. For several months thereafter, Clue and Little often did not sign the log book immediately upon arrival, but instead filled in their arrival time sometime later.
 
 
 5
 In the summer of 1995, Johnson took over as the Director of Labor Relations for the Division of Subways, which made her the second-highest ranking official in subway labor relations. A New Directions official testified at trial that shortly after Johnson's arrival Johnson had said "that she knew that I was [in] New Directions, she knew that all of us in that office [were in] New Directions. She was brought here, meaning to Labor Relations, to take care of us, to clean this up." Johnson testified that she and other management officials were aware of New Directions and its hostility toward the union leadership and management, but she denied making the anti-New Directions statement attributed to her.
 
 
 6
 In December 1995, Johnson--citing Clue and Little's failure to sign in immediately upon arrival and alleging that this violated the release time program's policy--suspended the plaintiffs from their jobs. Johnson discussed the charges against Clue and Little with her superiors, but they neither approved nor disapproved of Johnson's actions, and there is no evidence in the record that Johnson's superiors were aware that Clue and Little were affiliated with New Directions. Pursuant to a collective bargaining agreement, Clue and Little challenged their suspension before an arbitrator. The arbitrator eventually ruled that the release time policy had not specified that employees were required to sign in upon arrival and therefore that the charges against Clue and Little were without merit. Both Clue and Little were restored to their jobs with back pay.
 
 
 7
 Soon after, Clue and Little brought this § 1983 action against Johnson and the Transit Authority, claiming that both defendants had illegally retaliated against them for their union activities on behalf of New Directions. The district court ruled that Johnson was not entitled to qualified immunity and that there was "no dispute that plaintiffs were engaged in union activities involving the exercise of their constitutionally protected rights of free speech and association." Following a jury trial, Johnson and the Transit Authority were found liable. The district court, however, granted the Transit Authority's motion for a judgment as a matter of law, concluding that "there was nothing in the evidence of this case that in the Court's view would warrant a reasonable juror or any reasonable juror concluding that there was an official policy to retaliate against members of New Directions."
 
 
 8
 Both sides now appeal.
 
 DISCUSSION
 I. Johnson's Liability
 
 9
 The Supreme Court has stated an "unambiguous preference" that we consider the merits first in qualified immunity cases, see Medeiros v. O'Connell, 150 F.3d 164, 169 (2d Cir.1998) (relying on County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998)). Consistent with that view, we deem it advisable to begin by analyzing whether Clue and Little had a constitutional right to engage in their New Directions advocacy free from retaliation by Johnson. There is no doubt that retaliation against public employees solely for their union activities violates the First Amendment. See, e.g., Boals v. Grey, 775 F.2d 686, 693 (6th Cir.1985). Johnson's position, however, is that her alleged retaliation against Clue and Little does not support a First Amendment claim because their activities were on behalf of a minority union faction rather than on behalf of the union itself. We disagree and conclude that Clue and Little had a constitutional right to be free from retaliation for their New Directions activities.
 
 A. Public Concern
 
 10
 We assume, for purposes of this opinion, that to obtain protection under the First Amendment Clue and Little's activities must have involved a "public concern."[2] See Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Once that threshold requirement is met, a public employee's speech rights must be protected unless, under all the circumstances, the employee's interest in free comment is outweighed by the State's interest in the efficiency of its public services. See Pickering v. Board of Educ., 391 U.S. 563, 572-73, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The thrust of Johnson's argument is that Clue and Little's activities do not involve a public concern because they involve an intraunion dispute.
 
 
 11
 There may well be intraunion disputes that do not raise enough of a public concern to trigger First Amendment protection. And there undoubtedly exist intraunion conflicts that manifestly raise matters of public concern because the faction's activity would be tantamount to core union activity. For example, if the union leadership was so much under the thumb of management that the union was nothing more than a "company union," the activities of a minority union faction could properly be viewed as representing the only genuine ongoing union activity. Since retaliation solely for union activity clearly raises a public concern under Connick, see, e.g., Boals, 775 F.2d at 693, the actions of the above mentioned faction would also do so.
 
 
 12
 A more difficult question is posed by the facts in the record before us. New Directions based its challenge to the TWU leadership on the ground that union leaders were "in bed" with management and supported management policies that redounded to the disadvantage of workers. In other words, although the TWU leadership was admittedly independent of management control, New Directions nevertheless criticized the stance that the TWU leadership had taken toward management and sought to change that relationship. This type of "factional" activity falls into a grey area that may or may not state a public concern under Connick.
 
 
 13
 We are persuaded, however, that Clue and Little's activities on behalf of New Directions did involve a public concern even if one characterizes those activities as "factional" rather than as tantamount to "union activity." The intraunion dispute here did not merely involve internal union affairs. Instead, it was a struggle over the labor policies of the Transit Authority and what role the TWU ought to play in changing those policies. In waging that fight, New Directions strongly criticized management to the point where management officials themselves testified that they were well aware of the criticism. We believe that activities on behalf of a union faction that necessarily entail a substantial criticism of management raise matters of public concern under Connick. Accordingly, we hold that Clue and Little's advocacy of New Directions involved a public concern. Moreover, under the balancing test set forth in Pickering, we conclude that Clue and Little's First Amendment rights were not outweighed by the Transit Authority's interest in the efficiency of its services.
 
 B. Qualified Immunity
 
 14
 Having determined that Clue and Little raised a First Amendment claim, we must address the issue of whether Johnson had qualified immunity. "The defense of qualified immunity shields government officials from civil liability if the official's conduct did not violate constitutional rights that were clearly established at the pertinent time or if it was objectively reasonable for the official to believe that the conduct did not violate such rights." Cecere v. City of New York, 967 F.2d 826, 829 (2d Cir.1992).
 
 
 15
 In determining whether a particular right was clearly established at the time defendants acted, this Court has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.
 
 
 16
 Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir.1991).
 
 
 17
 Although we believe factional activities of the type Clue and Little participated in are constitutionally protected from employer retaliation, no court had so held when the retaliation occurred in December 1995. We had implied that such a situation might warrant First Amendment protection. See Connecticut State Fed. of Teachers v. Board of Educ. Members, 538 F.2d 471, 479 (2d Cir.1976). But we did so only in a passing hypothetical. See id. As such, our comment was insufficient to meet the standard of clarity that precedents require before qualified immunity is overcome.[3] See, e.g., Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Greenwood v. State of New York, 163 F.3d 119, 124 (2d Cir.1998). As a result, we conclude that Johnson is protected by qualified immunity in this case and that the judgment against her must be reversed.
 
 II. The Transit Authority's Liability
 
 18
 The district court granted judgment as a matter of law to the Transit Authority. "In examining a defendant's motion for judgment as a matter of law ... the district court must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor." Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 79 (2d Cir.1997) (internal quotation marks omitted). "A district court may grant a judgment as a matter of law ... only if no reasonable jury could find for the non-moving party." See id. And when reviewing the grant of such a judgment, we apply the same standards. See Maiorina v. United States Mineral Prods. Co. ( In re Joint E. & S. Dist. Asbestos Litig.), 52 F.3d 1124, 1131 (2d Cir.1995).
 
 
 19
 A plaintiff suing a municipal authority under § 1983 must prove that the constitutional wrong complained of resulted from the municipal authority's official policy. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As a result, the theory of respondeat superior does not apply to make municipalities liable when one of their officials commits a constitutional tort. See id. at 694. But "[w]here an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy." See Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir.1983).
 
 
 20
 Our review of the record leads us to conclude that Clue and Little presented no persuasive evidence (1) that a policy against New Directions existed within the Transit Authority or (2) that Johnson had final authority such that her retaliatory acts could be deemed Transit Authority policy.
 
 
 21
 The only suggestion of a policy comes from Johnson's alleged comment that "she was brought here, meaning to Labor Relations, to take care of us to clean [New Directions] up." But that isolated and ambiguous comment is simply not enough to justify a finding that the Transit Authority had placed her in her job so that she could act against New Directions. Nor can we assume a policy from the fact that Johnson mentioned to her superiors her intention to suspend Clue and Little for violating the release time policy. There is no evidence in the record that Johnson's superiors were aware that Clue and Little were members of New Directions when Johnson suspended the two union officials. As a result, even if their silence is, perhaps appropriately, taken as approval, it cannot constitute approval of a retaliatory policy, but only of Johnson's intent to apply certain rules strictly.
 
 
 22
 There is also no evidence that Johnson had final authority that enabled her to establish retaliatory policies. There is some dispute as to whether she could have, on her own, decided to enforce strictly the release time program rules. She testified that she could, but also testified that she checked with her superiors before acting. Even if she did, as she claimed, have final authority to decide to institute a strict enforcement of policies established by others, this is the most that her claim could amount to. There is no evidence of any sort that she could not be overruled by her superiors if she sought by her actions to suspend employees out of a retaliatory motive.[4] On the facts of this case, therefore, Johnson's authority did not constitute the kind of final authority that under Monell permits the attribution of her retaliatory motive to the Transit Authority. We therefore affirm the district court's dismissal of plaintiffs' Monell claim.
 
 
 23
 The judgment of the district court is, therefore, affirmed in part and reversed in part.
 
 
 
 *
 The Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Since we hold that Johnson was not liable to the plaintiffs, we need not address the arguments regarding the damages assessed against Johnson
 
 
 [2]
 In fact, it is anything but clear whether the public concern requirement applies to associational claims made by government employees. Since the Supreme Court's decision in Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), a public concern has been a prerequisite to First Amendment protection of public employee speech. Some courts have read Connick to say that a public concern must also be raised for government employees to state a First Amendment associational claim, while others have refused to apply the public concern requirement beyond the category of speech. Compare, e.g., Boals 775 F.2d at 691-92 (6th Cir.1985) (holding that public concern is required for state employee associational claims), with Hatcher v. Board of Pub. Educ., 809 F.2d 1546, 1558 (11th Cir.1987) (rejecting application of Connick to associational claims). The most sophisticated opinion on this question carefully distinguishes between "hybrid" free speech/free association claims, to which it believes the public concern requirement should apply, and pure free association claims, to which it concludes the public concern does not and ought not to apply. See Balton v. City of Milwaukee, 133 F.3d 1036, 1041 (7th Cir.1998) (Cudahy, J., concurring in the judgment)
 Clue and Little, however, do not argue that their associational rights are protected regardless of public concern. Instead, they contend that their activities raise a public concern under clearly established law and that Johnson is therefore not entitled to qualified immunity. See infra. Under the circumstances, we assume arguendo that the public concern requirement applies in this case, and express no view as to whether the test encompasses associational claims. Whatever footnote five of Sacramento requires of us in qualified immunity cases, it surely cannot stand for the proposition that we must decide aspects of the merits that are not raised by the parties seeking relief.
 
 
 [3]
 Moreover, although Johnson's conduct seems clearly to have violated state labor law, that fact--perhaps surprisingly, but under prior court rulings manifestly--does not help Clue and Little's suit against Johnson:
 [A]n official [will] not be held liable in damages under § 1983 unless the constitutional right he was alleged to have violated was 'clearly established' at the time of the violation.... Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.... Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation--of federal or of state law--unless that statute or regulation provides the basis for the cause of action sued upon.
 Davis v. Scherer, 468 U.S. 183, 194 & n. 12, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (internal citations and quotation marks omitted); see Robison v. Via, 821 F.2d 913, 922 (2d Cir.1987).
 
 
 [4]
 Since Johnson denied at trial that she had retaliated against Clue and Little for their New Directions affiliation, her ambiguous comment that she had final authority to suspend the plaintiffs cannot plausibly be read as an assertion that she believed she had final authority to retaliate against the plaintiffs