06-4714-cv
Blackman v. New York City Transit Auth.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

———————

August Term, 2006

(Argued: June 11, 2007)                              Decided: June 21, 2007)

Docket No. 06-4714-cv

————————————

CARLOS BLACKMAN,

*Plaintiff-Appellant*,

MARK WINSLOW, ROBERT DAVENPORT, JOSEPH SEMIEN, LUIS SANTANA and
ROGER TOUSSAINT, as President of Transport Workers Union, Local 100,

*Plaintiffs*,

– v. –

NEW YORK CITY TRANSIT AUTHORITY,

*Defendant-Appellee*.

————————————

Before: McLAUGHLIN, CALABRESI, and SOTOMAYOR, *Circuit Judges*.

Appeal from a final judgment of the United States District Court for the Eastern District
of New York, granting Defendant-Appellee's motion for summary judgment. Plaintiff-Appellant
argues that he was terminated from his employment in violation of his First Amendment rights.
The judgment of the district court is AFFIRMED.

Stuart Lichten, Schwartz, Lichten & Bright, P.C., New York, N.Y., *for Plaintiff-Appellant*.

Richard Schoolman, Office of the General Counsel, New York City Transit Authority, Brooklyn, N.Y., *for Defendant-Appellee*.

PER CURIAM:

We have long recognized that "the First Amendment protects the eloquent and insolent alike." *Sheppard v. Beerman* (*Sheppard I*), 94 F.3d 823, 829 (2d Cir. 1996). This is no less true for a government employee, because "[o]ne does, of course, have a First Amendment right not to be terminated from public employment in retaliation for engaging in protected speech." *Locurto v. Giuliani*, 447 F.3d 159, 183 (2d Cir. 2006). Guided by these principles, the Supreme Court, in *Rankin v. McPherson*, 483 U.S. 378, 392 (1987), held that a clerical employee in a Constable's office could not properly be terminated for opining, upon hearing that there had been a failed attempt to assassinate the President of the United States, that "[i]f they go for him again, I hope they get him." *Id.* at 379-80.

It is equally well-established that the First Amendment rights of an employee are not unlimited. After all, "the Government as an employer, and hence as a consumer of labor, must retain some freedom to dismiss employees who do not meet the reasonable requirements of their jobs." *Locurto*, 447 F.3d at 163. Given these competing individual and governmental interests, courts are often required to balance carefully the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v.*

2

*Bd. of Educ.*, 391 U.S. 563, 568 (1968).

In the present case — involving a government employee who was fired after he commented that he thought two Transit Authority supervisors who had recently been murdered "deserved what they got for getting [a Transit Authority employee] fired" — the district court concluded that it was unnecessary to conduct a balancing of interests because, in its view, the speech of the employee, Plaintiff-Appellant Carlos Blackman ("Plaintiff" or "Blackman"), did not address a matter of public concern. *Blackman v. New York City Transit Auth.*, No. 04-CV-1930, 2006 WL 2620454, at *5-*6 (E.D.N.Y. Sept. 13, 2006) (Gold, *M.J.*). *See Connick v. Myers*, 461 U.S. 138, 147 (1983) (holding that the government generally retains significant flexibility in dealing with speech "*only* of personal interest" (emphasis added)); *Melzer v. Bd. of Educ.*, 336 F.3d 185, 193 (2d Cir. 2003) (explaining that, if speech is on matters of purely personal concern, "the government is granted wide latitude to deal with the employee without any special burden of justification," and *Pickering* balancing is unnecessary).[1]

The question of whether Plaintiff's statement touched on matters of public concern is a complex one. At the same time, the balance of interests decisively favors the government in this case. Under the circumstances, we believe the better approach is to assume *arguendo* that Plaintiff's speech did address a matter of public concern, and then to turn to *Pickering* balancing. Adopting this approach ourselves, we now affirm.

## BACKGROUND

---

[1] Blackman does not dispute the applicability of *Connick*'s "public concern" requirement to this case, *see generally Locurto v. Giuliani*, 447 F.3d 159, 174 (2d Cir. 2006); *Clue v. Johnson*, 179 F.3d 57, 60 n.2 (2d Cir. 1999); he argues, instead, that his speech was on matters of public concern.

The following facts are undisputed. *See Blackman*, No. 04-CV-1930, 2006 WL 2620454, at *1 n.2 (explaining that the parties have largely stipulated to the earlier factual findings of an independent arbitrator). Blackman, an employee of the Transit Authority for fifteen years, worked as a Car Inspector at the 240th Street maintenance shop. During his tenure, Blackman was an outspoken union advocate on a variety of issues, including employee heath and safety concerns. Blackman also held numerous union positions, culminating in 2003 with his election to serve as local Union Chairman.

On December 4, 2003, Blackman, while at work, expressed concern to his co-workers about the safety of hydraulic jacks that Car Inspectors were required to use. Because Blackman believed that the equipment was overdue for an inspection, and that parts of the equipment were cracked or loose from overuse, he took pictures of the machinery and sought out his supervisor, Pablo Perez. Blackman was, in the end, not satisfied with Perez's response to his concerns and refused to use the hydraulic jacks. Perez then told Blackman that he would find someone else to do the job and that Blackman should leave the work area. Blackman repeatedly refused, and eventually told Perez that "I may lose a couple of hours, but you will lose a lot more than that"; that Perez should "[c]all the cops on me, go ahead and call the cops"; and that "I wish that some day I'll read in the newspaper that something bad has happened to you and also to your kids." Perez continued to ask Blackman to leave, to which Blackman replied, making the following apparent threat: "I am not leaving; I have a [Transit Authority] pass, a Union card and a .38 and I'll call my brother." Perez was not sure whether Blackman "actually meant it," but he was frightened and so, rather than responding, walked away.

It is undisputed that Blackman's comments on December 4 did not touch on matters of

4

public concern. The Transit Authority, however, did not propose to fire Blackman for those statements or that conduct. Instead, the Transit Authority filed a Disciplinary Action Notice (DAN) against Blackman, recommending only that he receive a 30-day suspension. On Blackman's behalf, Local 100, which represents various employees of the Transit Authority, objected to the DAN and pursued the grievance process that the collective bargaining agreement established.

While the grievance proceedings were pending, Blackman made the comments that are most relevant to this appeal. On February 27, 2004, a disgruntled Transit Authority employee, who had been fired from his position as a Car Cleaner, shot and killed two of his former supervisors whom he believed had been involved in his dismissal. On March 1, 2004, the first day of work at the 240th Street Shop after the shootings, various employees engaged in a discussion about the murders. After one employee stated that he thought it was a "bad" or "sad" situation, Blackman joined the conversation and commented that, "I hate to say this, but those two guys deserve what they got for getting the [employee-turned-murderer] fired." At this point, one of Blackman's colleagues turned to Blackman and asked him, "If you lost your livelihood, what would you do?" To this, Blackman essentially repeated his earlier comment, stating this time that "[t]hose two scumbags deserved what they got for getting the [employee] fired.".

Shortly thereafter, the Transit Authority filed a second DAN against Blackman, based upon the statements he made on March 1, 2004. This time, the Transit Authority recommended that Blackman be dismissed from his employment, in view of the two alleged violations. On March 8, 2004, Blackman was given a pre-disciplinary suspension.

On September 8, 2004, the Impartial Arbitrator to whom the two DANs had been

submitted, Melissa H. Biren, issued an Opinion and Award in which she concluded that "[t]he Transit Authority has cause to discipline Blackman for [his] misconduct." In response to Local 100's argument that terminating Blackman for his December 4, 2003 and March 1, 2004 comments would violate his First Amendment rights, Arbitrator Biren found that none of Blackman's comments addressed matters of public concern, and that, even if they had, Blackman's interest in speaking as he did was outweighed by the Transit Authority's interest in maintaining a safe and productive workplace.

Blackman responded to the decision by filing this suit in district court. On September 13, 2006, the district court[2] granted the Transit Authority's motion for summary judgment. The district court explained that "Blackman concedes that the statements he made on December 4, 2003 to . . . Perez did not address a matter of public concern . . . ." *Blackman*, No. 04-CV-1930, 2006 WL 2620454, at *4;. Thus, the district court observed, "[t]he question raised by the pending motion . . . is whether Blackman's statement on March 1, 2004 . . . may be 'fairly characterized as constituting speech on a matter of public concern.'" *Id.* (quoting *Connick*, 461 U.S. at 146). And on this point, the district court held, "as a matter of law[,] that Blackman's statement that [the murdered supervisors] 'deserve[d] what they got' is not protected speech, and that Blackman's First Amendment claim must therefore be dismissed." *Id.* at *6. The district court then stated that, "[b]ecause I find that the speech at issue is not protected, I do not reach the *Pickering* balancing test." *Id*.

## DISCUSSION

---

[2] Transit Authority's motion for summary judgment was referred to United States Magistrate Judge Steven M. Gold by consent of the parties.

6

"We review a grant of summary judgment de novo, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Sheppard v. Beerman* (*Sheppard II*), 317 F.3d 351, 354 (2d Cir. 2003).

In light of the parties' various concessions,[3] the only remaining issues in this case are (1) whether Blackman's comments on March 1, 2004 can be "fairly characterized as constituting speech on a matter of public concern," *Id.* at 355 (citation and internal quotation marks omitted); and (2) if those comments can be so characterized, whether Blackman's "interest in free comment is outweighed by the State's interest in the efficiency of its public services," *Clue v. Johnson*, 179 F.3d 57, 60 (2d Cir. 1999).

The first issue is a close one. Blackman, through his December 4, 2003 comments and conduct, revealed himself to be a potentially violent person. And it may well have been reasonable for the Transit Authority to conclude that the opinions Blackman expressed on March 1, 2004, when viewed against the backdrop of the menacing statements he made on December 4, 2003, provided ample basis to find that he continued to be a threat to the safety of his supervisors. But the Transit Authority's plausible fears must be considered at the balancing stage. For "[t]he inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin*, 483 U.S. at 387.

Blackman was an active union member, and a vocal advocate on a variety of issues, including workplace safety. He was, at the time of his December 4 and March 1 comments, the elected local Union Chairman. His violent comments can be viewed against the context of his struggles and frustrations with Transit Authority supervision over these and other concerns —

---

[3] *See generally Blackman*, No. 04-CV-1930, 2006 WL 2620454, at *4.

7

concerns which transcend his own personal interests. It would not be impossible, therefore, to take Blackman's March 1, 2004 comments as having, to some extent, touched on matters of public concern.[4] *Cf. Rankin*, 483 U.S. at 386.

Nevertheless, we do not decide whether they did or did not. For, assuming *arguendo* that Blackman's comments *did* implicate a matter of public concern, we find that, at the balancing stage, the government's interests plainly outweigh those of Blackman. "It is clear . . . that a government official may, in certain circumstances, fire an employee for speaking — even on a matter of public concern — where that speech has the potential to disrupt the work environment." *Sheppard I*, 94 F.3d at 827. Importantly, as our court has recognized, "the closer the employee's speech reflects on matters of public concern, the greater must be the employer's showing that the speech is likely to be disruptive before it may be punished." *Jeffries v. Harleston*, 52 F.3d 9, 13 (2d Cir. 1995). In this case, the converse of *Jeffries* applies: the fact that Blackman's March 1, 2004 comments at most only minimally touch on matters of public concern means that the government's burden, at the balancing stage, is at its lowest.

The government's interest in firing Blackman, instead, is substantial. Even assuming that Blackman's March 1, 2004 statements may have addressed matters of public concern, the opinions expressed by Blackman, when viewed in the light of his earlier threat against Perez, reveal him to be a person of violent disposition, who was potentially deeply disruptive of the

---

[4] To be sure, Blackman's comments were likely also motivated by the fact that he was himself, at that time, facing disciplinary action. But this court has made clear that "the speaker's motive is not dispositive as to whether an employee's speech relates to a matter of public concern," *Reuland v. Hynes*, 460 F.3d 409, 418 (2d Cir. 2006), because, "[m]ixed motivations are involved in most actions we perform every day; we will not hold [plaintiffs] to herculean standards of purity of thought and speech," *Johnson v. Ganim*, 342 F.3d 105, 114 (2d Cir. 2003) (alteration in original) (citation and internal quotation marks omitted).

workplace. Hence, the government's interests in firing him were especially weighty.

We "may, of course, affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *Acequip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155 (2d Cir. 2003). Accordingly, we affirm the district court's opinion on the ground that *Pickering* balancing clearly favors the government's position.[5]

* * * *

**CONCLUSION**

Assuming *arguendo* that Blackman's March 1, 2004 comments can be "fairly characterized" as having touched on matters of public concern, the balance of interests weighs in favor of the Transit Authority. The judgment of the district court is AFFIRMED.

---

[5] We pause to note that, in cases in which the "matters of public concern" issue is close but the task of balancing interests does not appear to be a difficult one, it generally will be preferable for a district court to assume *arguendo* that the "matters of public concern" requirement has been satisfied, and then proceed directly to the balancing of interests. *Cf. Locurto*, 447 F.3d at 175 ("Assuming, therefore, that the plaintiffs were speaking on a matter of public concern, we proceed to the second part of the *Pickering* framework."). Such an approach would avoid the need for time-consuming remands, especially in cases in which *Pickering* balancing, though clearly favoring one party, cannot be done comfortably by an appellate court.