■ In the Matter of RICHARD SANTER, Appellant, v BOARD OF EDUCATION OF EAST MEADOW UNION FREE SCHOOL DISTRICT, Respondent. [957 NYS2d 196]—

During the 2006-2007 school year, the Board of Education of the East Meadow Union Free School District (hereinafter the District) and the District's teachers' union were engaged in negotiations on a new collective bargaining agreement. As negotiations continued without an agreement, teachers engaged in concerted actions, including weekly picketing in front of the Woodland Middle School (hereinafter Woodland) when students were being dropped off. Woodland encompasses the sixth through eighth grades, and its students generally are between 11 and 14 years old. On March 2, 2007, it was raining, so some of the teachers decided that, rather than stand outside of the building to picket, they would park their cars along nearby Wenwood Drive and display their signs in their car windows. Wenwood Drive, a two-way street, was one of several locations where parents would drop off their children. The petitioner, Richard Santer, the union's building president at Woodland, participated in this protest. Beginning at 7:25 a.m., approximately 8 teachers parked their cars, in legal parking spaces, along either side of Wenwood Drive, with 15 to 16 teachers participating in total. None of the teachers' cars blocked either of two curb cuts in front of the school. According to the school principal, the parking activity caused traffic to become extremely congested, and some children were dropped off in the street and had to cross traffic lanes to reach the sidewalk. No school official asked the teachers to move their cars during the protest, and no child was injured.

The District preferred a disciplinary charge pursuant to Education Law § 3020-a against Santer, a tenured teacher, alleging that he "intentionally created a health and safety risk by purposely situating his vehicle alongside the curb of Wenwood Drive in front of the Woodland Middle School in order to preclude children from being dropped off at curbside. The action resulted in children being dropped off in the middle of the street which resulted in an otherwise avoidable and unnecessary health and safety hazard." At the ensuing arbitration hearing, the petitioner argued, inter alia, that he had a constitutionally protected right to peacefully picket in a public area before the beginning of the school day. The arbitrator rejected this argument, found the petitioner to be culpable of the charge of creating a health and safety hazard, and directed that he pay a fine in the sum of $500. The petitioner commenced this proceeding challenging the arbitration award. The Supreme Court confirmed the finding of misconduct, and denied the petition. The petitioner appeals.

Where, as here, arbitration is statutorily required, "judicial review under CPLR article 75 is broad, requiring that the award be in accord with due process and supported by adequate evidence in the record" (*Motor Veh. Mfrs. Assn. of U.S. v State of New York*, 75 NY2d 175, 186 [1990]). "Due process of law requires . . . that the [arbitrator's determination] under the power conferred by statute have a basis not only in his [or her] good faith, but in law and the record before him [or her]" (*Mount St. Mary's Hosp. of Niagara Falls v Catherwood*, 26 NY2d 493, 507 [1970]). The award must be rational and not arbitrary and capricious (*id.*; *see Matter of City of Buffalo v Rinaldo*, 41 NY2d 764, 765-767 [1977]). Here, evidence that children were dropped off in the middle of the street due to the arrangement of the cars provided a rational basis for the arbitrator's determination that Santer contributed to the creation of a health and safety hazard, and the award was not arbitrary and capricious, as we held in another matter concerning the same protest (*see Matter of Trupiano v Board of Educ. of E. Meadow Union Free School Dist.*, 89 AD3d 1030 [2011]).

The petitioner here, however, raises an argument that the petitioner in *Trupiano* did not raise in our Court, specifically, that the disciplinary proceeding commenced against him, and the discipline ultimately imposed, violated his right to free speech under the First Amendment to the United States Constitution. Like other public employees, teachers "do not leave their First Amendment rights at the schoolhouse door, even though it is plain that those rights are somewhat diminished in

public employment" (*Melzer v Board of Educ. of City School Dist. of City of New York*, 336 F3d 185, 192 [2003], *cert denied* 540 US 1183 [2004]). In determining whether a disciplinary measure taken against a public employee violates the employee's First Amendment rights, a court must first determine whether the speech that led to the discipline related to a matter of public concern. If so, the court must balance free-speech principles against the threat to effective government operation presented by that speech (*see Pickering v Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 US 563 [1968]; *Melzer v Board of Educ. of City School Dist. of City of New York*, 336 F3d at 193; *Rankin v McPherson*, 483 US 378, 384-388 [1987]). The government bears the burden of showing that the disciplinary measure is justified (*see United States v Treasury Employees*, 513 US 454, 466 [1995]; *Rankin v McPherson*, 483 US at 388; *Melzer v Board of Educ. of City School Dist. of City of New York*, 336 F3d at 193).

Santer's "speech" regarding collective bargaining issues indisputably addressed matters of public concern (*see Clue v Johnson*, 179 F3d 57, 61 [1999]; *Boals v Gray*, 775 F2d 686, 693 [1985]). Moreover, despite the evidence establishing that the manner in which the protest was carried out interfered with the safe and effective drop-off of students (*see Matter of Trupiano v Board of Educ. of E. Meadow Union Free School Dist.*, 89 AD3d 1030 [2011]), we find that the District failed to meet its burden of demonstrating that Santer's exercise of his First Amendment rights so threatened the school's effective operation as to justify the imposition of discipline (*see Rothschild v Board of Educ. of City of Buffalo*, 778 F Supp 642, 656 [1991]). Significantly, Santer did not violate any law or school policy. In parking his car on Wenwood Drive and moving it prior to 8:00 a.m., Santer fully complied with the applicable parking regulation. Had other members of the public parked their cars along Wenwood Drive in this manner, the District would have had no recourse, because such parking was entirely legal. If the municipality in which Woodland is located believed that it was unsafe for cars to park along Wenwood Drive during the time when parents dropped off their children at the school, it could have prohibited parking during the relevant time periods, but it did not do so. Moreover, no school official asked the teachers to move their cars during the protest, and no student was injured as a result of the protest. Consequently, the record establishes that the danger presented by the legally parking teachers could not have been substantial. Under these circumstances, we conclude that the District failed to demonstrate that Santer's legal speech so threatened the effective operation of the school that discipline of him was justi-

fied (*cf. Melzer v Board of Educ. of City School Dist. of City of New York,* 336 F3d at 198).

The Supreme Court of the United States has stated that "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools" (*Shelton v Tucker,* 364 US 479, 487 [1960]). The disciplinary measures imposed on Santer would likely have the effect of chilling speech on an important matter of public concern—the negotiation of a collective bargaining agreement. Balkin, J.P., Chambers, Hall and Sgroi, JJ., concur.