NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4228
_____

MICHELLE THOMAS,
Appellant

v.

DELAWARE STATE UNIVERSITY;
LANCE T. HOUSTON, individually and in his official capacity;
AMIR MOHAMMADI, individually and in his official capacity;
OFFICER HEATHER COOKE, individually and in her official capacity
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 10-cv-00522)
District Judge: Honorable Gregory M. Sleet
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 17, 2015

Before: FISHER, CHAGARES, and JORDAN, *Circuit Judges*.

(Filed: September 21, 2015)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Appellant Michelle Thomas asks us to reverse an order of the United States District Court for the District of Delaware granting summary judgment against her on claims that Lance Houston and Amir Mohammadi violated her rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[1] We will affirm.

## I.   BACKGROUND[2]

Thomas was first hired by Delaware State University ("DSU") in 2001 and is currently employed as a senior secretary at DSU's Department of Housing and Residential Education. She is also a member of the American Federation of State and County Municipal Employees Local 1007 ("AFSCME" or the "Union"), in which she has held various leadership positions throughout her employment, eventually becoming the Union president. In that capacity, Thomas brought grievances against DSU on behalf of

---

[1] At the time the appellees moved for summary judgment, Thomas was asserting claims against Delaware State University ("DSU"), consisting of constitutional claims under 42 U.S.C. § 1983 and whistleblower claims under Delaware state law. In her summary judgment briefing, Thomas conceded that DSU was not amenable to suit under § 1983, thus leaving only the state-law whistleblower claims pending against DSU. Because the District Court dismissed all of Thomas' federal claims, it declined to exercise supplemental jurisdiction over the state-law claims and thus dismissed the case against DSU. Thomas has not advanced any argument in either her opening brief or her reply brief that the dismissal of the claims against DSU was in error. Accordingly, she has abandoned any challenge to that portion of the District Court's decision. *See, e.g.*, *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

[2] The facts are recounted in the light most favorable to Thomas, the non-movant. *See infra* n.4.

the Union, the majority of which concerned violations of the Collective Bargaining Agreement. At the time of the events underlying this litigation, Mohammadi was employed as DSU's Vice President for Finance and Administration and Houston was employed as DSU's Assistant Vice President for Human Resources and Legal Affairs. Both Mohammadi and Houston have since left DSU.

Between 2005 and 2008, Thomas amassed approximately 20 parking citations for violations of DSU parking regulations. Based on her failure to pay those parking tickets, Thomas's vehicle was one of 193 vehicles added to a DSU tow list. On October 8, 2008, Heather Cooke, a DSU police officer, arranged to have Thomas's car towed.[3] Although the precise details are disputed (and irrelevant to this case), some kind of altercation ensued and Thomas offensively touched Cooke. Thomas's car was never towed and she paid the outstanding tickets. Cooke nevertheless spoke with James Overton, the chief of the DSU police force, and ultimately decided to press charges against Thomas for the touching incident. Thomas was arrested on November 6, 2008.

After learning that Thomas had been arrested, DSU initiated its own investigation and Mohammadi scheduled a meeting with her to ascertain her side of the story. On November 19, 2008, the meeting took place with Thomas, Mohammadi, and an AFSCME union representative in attendance. Although he believed that Thomas did, in fact, offensively touch Cooke, Mohammadi apparently decided to wait until the outcome of Thomas's criminal proceedings before instituting disciplinary action. In June 2009, while the criminal charges were still pending but unresolved, Thomas filed a union

---

[3] Cooke did not know at the time that the car belonged to Thomas.

3

grievance against Mohammadi's son, alleging that he had performed work at DSU that was reserved for union members only. Mohammadi was upset and allegedly told Thomas's AFSCME representative that he would "get" Thomas for what she had done.

On December 1, 2009, after several delays, Thomas entered a plea agreement in her criminal case and thereby admitted to offensively touching a law enforcement officer. After Mohammadi learned that Thomas had pled guilty to the offense, he sent her a Notice of Paid Administrative Leave and Intent to Terminate (the "Notice") on December 3, 2009. The Notice informed Thomas that she was going to be placed on paid administrative leave due to her false and misleading statements during DSU's investigation of the criminal incident, that DSU intended to terminate her, and that Thomas had the right to request a pre-termination hearing within three days.

Shortly after receiving the Notice, Thomas requested a pre-termination hearing. DSU held the pre-termination hearing on January 21, 2010, with Houston conducting the hearing and Thomas and her AFSCME representative also attending. Thomas argued that she had not lied about her conduct and that the termination was retaliatory. On February 9, 2010, Houston issued a notice of termination to Thomas based on the charges set forth in the December 3 notice, with Mohammadi being the one who ultimately made the decision to terminate her. After she filed a union grievance, however, Thomas was reinstated to her position without backpay and returned to work on December 10, 2010.

In this suit, Thomas initially brought claims for First Amendment retaliation, malicious prosecution, due process violations, false arrest, false imprisonment, and violations of the Delaware Whistleblower Protection Act, 19 Del. Code § 1703. By

4

stipulation, she dismissed all of her claims against Cooke and most of her claims against the remaining defendants, leaving only section 1983 claims for deprivation of due process and her First Amendment rights, and certain state-law whistleblower claims. The remaining defendants – Mohammadi, Houston, and DSU – successfully moved for summary judgment, and Thomas timely appealed the ruling as to Mohammadi and Houston.

## II. DISCUSSION[4]

Thomas argues that the District Court erred in dismissing her due process claim because the pre-termination hearing was insufficient and erred in dismissing her First Amendment claim because her disclosures were both protected and causally related to her termination.

### A. DUE PROCESS CLAIM

Thomas claims that her dismissal violated her due process rights because she was terminated without an opportunity to "explain her side of the story." (Opening Br. at 32.) As the District Court ruled, however, that is incorrect. In order to establish a due process violation, Thomas must show that: "(1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo and "view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010) (internal quotation marks omitted). Summary judgment is appropriate if we are satisfied that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

property[;] and (2) the procedures available to h[er] did not provide due process of law." *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (internal quotation marks omitted). Before a public employee may be terminated for cause, she is entitled to a pre-termination hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985). The issue here is the adequacy of the pre-termination hearing afforded to Thomas.[5]

The "formality and procedural requisites for the [pre-termination] hearing can vary," but, at a minimum, the employee must be given "notice and an opportunity to respond." *Id.* (internal quotation marks omitted). The pre-termination hearing need not be elaborate and serves only as an "initial check against mistaken decisions." *Id.* at 545. It necessarily includes "oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell h[er] side of the story." *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). The hearing can be informal and "need not definitively resolve the propriety" of the deprivation. *Loudermill*, 470 U.S. at 545. Where there are adequate post-termination remedies available, "[a]n employee is generally not entitled to notice of the reasons for h[er] discharge in advance of a pre-deprivation hearing, or to present h[er] case to an impartial decision-maker at such a hearing." *Schmidt v. Creedon*, 639 F.3d 587, 596-97 (3d Cir. 2011) (internal citations omitted).

---

[5] The parties agree that Thomas had a protected property interest in her employment and that termination represents a deprivation of that right.

Contrary to Thomas's assertions, the District Court correctly concluded that she was not terminated on December 3, 2009, the date upon which she received the notice of intent to terminate. *See Riggins v. Goodman*, 572 F.3d 1101, 1110 (10th Cir. 2009) (rejecting public employee's argument that he was terminated on the date he received a letter apprising him that his employer intended to terminate him). Rather, her employment was terminated on February 9, 2010 – indeed, she had been on paid administrative leave up to that date. Further, the notice and opportunity to respond that Thomas received were sufficient to comport with due process: she received a letter on December 3, 2009 informing her of the reasons for the proposed termination, and had a hearing on January 21, 2010 at which she was represented by an AFSCME delegate and was able to present argument and evidence on her own behalf in responding to the charges. This is all that due process requires. *Loudermill*, 470 U.S. at 545-46.

Although Thomas concedes that the District Court's conclusion that "a [collective bargaining agreement] violation d[oes] not necessarily constitute a due process violation" is "technically correct," she nonetheless argues that collective bargaining agreements "exist to protect union employees and ensure that the correct process is followed. To ignore this is to negate the due process principles contained in the [collective bargaining agreement]." (Opening Br. at 31.) But, regardless of whether the hearing may have comported with the requirements set forth in the AFSCME collective bargaining agreement, it comported with the constitutional requirements of due process. *Cf. Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 150 n.4 (3d Cir. 2005) ("It is well-accepted that state law does not ordinarily define the parameters of due process for

7

Fourteenth Amendment purposes; rather, the minimum, constitutionally mandated requirements of due process in a given context and case are supplied and defined by federal law, not by state law or regulations." (internal quotation marks omitted)); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 319 (2d Cir. 2002) ("The Constitution, not state law sources such as the [collective bargaining agreement], determines what process is due."). Accordingly, her due process claim fails.

## B. FIRST AMENDMENT CLAIM

Thomas also disagrees with the District Court's dismissal of her First Amendment claim. To prevail on such a claim, she must establish: (1) constitutionally protected conduct, (2) retaliatory action, and (3) a causal connection between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). The District Court concluded that Thomas did not engage in protected activity and that she could not establish a causal connection between said activity and her subsequent termination. To dispose of this appeal, it is enough to note our agreement that Thomas did not engage in protected activity.

For a public employee's speech to be protected, she must have made the statements as a citizen, the statements must involve a matter of public concern, and the government employer must not have an adequate justification for treating the employee differently from a member of the public. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Here, Thomas's union grievances are not protected because they do not involve matters of public concern. While it is true that union activities may sometimes touch on a matter of

8

public concern, *see Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999) (union activities that "necessarily entail a substantial criticism of management raise matters of public concern"), it is not the case that all union-related grievances do, *Boals v. Gray*, 775 F.2d 686, 693 (6th Cir. 1985) ("[A]n employee's speech, activity or association, merely because it is union-related, does not touch on a matter of public concern as a matter of law."). Thomas's grievances related to "working conditions and other issues in union members' employment," (App. at 70) and Thomas offers nothing that would transform those personnel matters into issues of interest to the broader community. *Davignon v. Hodgson*, 524 F.3d 91, 101 (1st Cir. 2008) ("Private speech to fellow employees regarding union activities is not necessarily imbued with … public qualities."); *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir. 2007) ("Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." (internal quotation marks omitted)).[6]

---

[6] Thomas said she disclosed problems of asbestos and mold at DSU, and that could, arguably, touch on matters of public concern, *Brennan v. Norton*, 350 F.3d 399, 415 (3d Cir. 2003) ("[T]he statements regarding exposure of public employees to hazards such as asbestos can be fairly considered as relating to a matter of concern to the community." (internal quotation marks, brackets, and alterations omitted)), but she offers absolutely no evidence that she ever filed grievances or made any disclosures regarding the alleged contamination. Her unsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment. *N.L.R.B. v. FES, (a Div. of Thermo Power)*, 301 F.3d 83, 95 (3d Cir. 2002) ("Roche's testimony … amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."); *see also Arrington v. United States*, 473 F.3d 329, 343 (D.C. Cir. 2006) ("[S]ummary judgment is most likely when a

**III.     CONCLUSION**

For the forgoing reasons, we will affirm the ruling of the District Court.

---

plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined … by other credible evidence… ." (internal quotation marks and emphasis omitted)); *Brooks v. Am. Broad. Cos., Inc.*, 999 F.2d 167, 172 (6th Cir. 1993) ("As with a summary judgment analysis, the district court was not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").